## COCHRAN ET AL., AS SURVIVING EXECUTORS OF COCHRAN, *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 116. Argued December 15, 16, 1920.—Decided January 3, 1921.

Section 29 of the War Revenue Act of June 13, 1898, which taxed legacies and distributive shares at so much per hundred dollars of clear value, was repealed by the Act of April 12, 1902, with a proviso saving all taxes imposed by § 29 prior to July 1, 1902, when the repeal became effective. In an action against the United States to recover taxes computed, returned and voluntarily paid by executors after July 1, 1902, on legacies paid over before that date, *held*:

1. That a formal assessment prior to July 1, 1902, was not necessary to bring the taxes within the saving clause as taxes "imposed" prior to that date. P. 390.

2. That such assessment was not necessary to ascertain the value of life interests in trust funds, their value being ascertainable by computation upon mortality tables and rules lawfully adopted by the Commissioner of Internal Revenue. *Id.* See *Simpson* v. *United States*, 252 U. S. 547.

3. That the fact that the estate was not completely settled and that the legatees and trustee might be liable to refund if retained assets proved insufficient to pay all claims, was no ground for recovery of the taxes, in view of the facts that the personal estate greatly exceeded in value the amount of the legacies, and the total of claims and expenses during many years after the commencement of administration was comparatively insignificant. P. 392.

4. One who seeks to recover money voluntarily paid as a tax upon the ground that the tax was illegal, must prove its illegality and may not rely on mere assertion and speculation. P. 393.

54 Ct. Clms. 219, affirmed.

THE case is stated in the opinion.

*Mr. H. T. Newcomb*, with whom *Mr. Frederick L. Fishback* was on the brief, for appellants.

*The Solicitor General* for the United States.

MR. JUSTICE McKENNA delivered the opinion of the court.

Appeal from a judgment of the Court of Claims denying recovery of taxes paid under the War Revenue Act of June 13, 1898, and amendments, upon certain legacies made under the will of William F. Cochran.

The facts so far as we deem them material are as follows: Cochran died in New York, December 27, 1901, leaving a will and a personal estate of the value of $7,918,027.18, of which appellants and Eva S. Cochran were made executors. The latter has since died. The will was probated January 9, 1902, and letters testamentary issued the same date and administration was immediately undertaken and proceeded with without extraordinary or unnecessary delay.

Six months' notice to creditors was given as required by the law of New York and the time for the presentation of claims expired August 4, 1902. Prior to September 30, 1902, debts and claims against the estate were presented and for the most part paid to the aggregate amount of $98,589.04 of which amount $66,776.25 were paid prior to July 1, 1902. Expenses of administration during that period had been ascertained to be $125,000, of which sum $13,047.16 were paid prior to July 1, 1902. Otherwise, claims and expenses of administration had not been ascertained.

Certain sums were bequeathed to the executors in trust for the children of Cochran and there was also a legacy to a niece and one to a stranger to his blood. Trusts were set up in accordance with the will and the legatees were paid prior to July 1, 1902, the sums provided to be paid. The aggregate payment so made amounted to the sum of $3,140,979.10.

In 1892 and 1893 litigation was instituted against the decedent which might involve the estate, it was estimated, in the payment of several hundred thousand dollars or more.   The litigation according to the findings of the Court of Claims is still in progress and on account of it money has been retained by the executors that might otherwise have been distributed.   The probable outcome of the litigation is not shown.

Under the laws of New York funds in the hands of executors after the expiration of notice to creditors are liable to after-discovered debts, and legatees who have received money prior to the expiration of such notice are liable up to the amount paid them for claims subsequently presented.   The executors were not secured for the payments to legatees prior to July 1, 1902, and prior to that date the value of the residuary estate had not been ascertained.

In compliance with § 30 of the Act of June 13, 1898, the executors on February 17, 1903, made a return and filed it with the Collector of. Internal Revenue giving a schedule of the legacies arising from the personal property of the estate and the amount of tax due thereon.   The Collector accepted the schedule as correct.   The amount paid to him by the executors was the amount they estimated as the amount of the taxes due.   The schedule showed the taxes on each legacy and that the total was $158,321.78, which sum was by the Collector paid to the United States.

July 16, 1904, a demand was made upon the Commissioner of Internal Revenue for the repayment to the executors of the sum paid.   After one rejection (October 22, 1910), the Commissioner (March 15, 1915), recommended the claim for allowance in the sum of $107,292.24, and for the rejection of $51,029.54.   The recommendation was approved by the Secretary of the Treasury.   The former sum was paid, the latter was not, and remains unrefunded.

This sum was computed in respect to the interest of eight different legatees of which six were residuary legatees, and the computations were made according to certain general rules, tables and instructions for the use of Internal Revenue officers, administrators and trustees in determining the amount of taxes to be paid to the United States upon legacies or distributive shares arising from personal property under the Act of June 13, 1898. There was no special investigation by the Commissioner of Internal Revenue as to the expectancy of life of the several beneficiaries or as to the earning power of the bonds placed in trust for them respectively, and for their benefit.

The contentions of the parties are quite accurately opposed. The appellants contend that an assessment was a necessary condition to the collection of the taxes and that there was no assessment until after July 1, 1902, and that on that date the law which established the taxes was repealed.

In opposition it is urged by the United States that if an assessment was necessary the right to make it was reserved by the Repealing Act, and that the appellants, as executors, having made a report of the legacies and the taxes thereon, the report and its acceptance by the Collector of Internal Revenue was to all intents and purposes an assessment. It is further urged that if an assessment was necessary for the purpose of collecting the taxes, it is now immaterial.

These contentions constitute the issue in the case and depend upon the relation of the law (mostly statutory) to the facts and what it determines. As an element in the determination, the use of the rules of the Department and the mortality tables counsel dismisses from controversy, in concession to *Henry* v. *United States*, 251 U. S. 393, and *Simpson* v. *United States*, 252 U. S. 547. The remaining element, that is, the necessity of an assessment prior to July 1, 1902, to the validity of the taxes in ques-

tion, counsel for appellants say, revolves "upon the meaning and application of the word 'imposed,' the fifth word in the special saving clause of the repealing Act of April 12, 1902." And counsel define the word to include all of the steps necessary to the collection of a tax, making it tantamount to "accrued." In other words, the contention is, that a tax is not "imposed" by the simple declaration of a law that property shall be subject to it, but "imposed" only when the tax becomes due and payable, and that the taxes in the present case had not reached that essential condition before July 1, 1902, because they had not been assessed. In support of the contention, counsel cites *Mason* v. *Sargent*, 104 U. S. 689, and *Hertz* v. *Woodman*, 218 U. S. 205. There is much in the latter case which, it may be urged, is adverse to the contention, but upon this we are not called upon to pass, for counsel concede that if a statute imposes a tax in such way as that the amount is readily reduced to a certainty, no assessment is necessary. And this is true of the taxes in question.

By § 29 of the Act of June 13, 1898, c. 448, 30 Stat. 448, legacies or distributive shares such as this case is concerned with [1] are made subject to a duty at the rate of seventy-five cents for each and every hundred dollars of the clear value thereof and the tax is made a lien and charge for twenty years and its payment required before payment and distribution to the legatees. The section also requires the trustee to make and render to the Collector a schedule, list or statement of the legacies together with the amount of duty that has accrued or shall accrue thereon. Section 30 was amended March 2, 1901, but no change in anything important to the present controversy. Section 29 and the amendments of March 2, 1901, were repealed by Act of April 12, 1902, c. 500, 32 Stat. 97, *et*

_____

[1] We disregard a distinction in the legacies as not important to the argument.

*seq.*, but it was provided that "all taxes or duties imposed by section twenty-nine . . . and amendments thereof, prior to the taking effect" of the repealing act, should "be subject, as to lien, charge, collection, and otherwise, to the provisions of section thirty . . . and amendments thereof, which are hereby continued in force." Except as so continued in force the repealing statute took effect July 1, 1902.

The schedule under § 29 was rendered, as we have seen, accepted by the Collector, and taxes were paid in accordance therewith, in the sum of $158,321.78.

The schedule included legacies that had been paid after July 1, 1902, but as by Act of June 27, 1902, c. 1160, 32 Stat. 406, such legacies were not subject to a tax, the taxes on them were refunded, upon demand of the executors, but the Government refused to refund the taxes on legacies paid prior to that date. This suit was brought for their amount, that is, the sum of $51,029.54.

To support recovery, it is contended that there was no obligation of payment because, as has already been said, the amount to be paid was not made certain by assessment, or, to quote counsel, was not "so certain (or capable of such ascertainment) that reasonable minds could not disagree and that the exercise of judgment and the consideration and weighing of evidence could not affect the result." For this *Hagar* v. *Reclamation District,* 111 U. S. 701, and other cases are cited and reviewed.

But we cannot agree that there was uncertainty. We have seen the amount of taxes imposed by the statute was definite and the appellants had no trouble in estimating and returning the value of the legacies upon which it was imposed. The basis of the claim of uncertainty is that the estate was and is not settled and that there is a possibility that the legatees may be called upon to pay debts. The contention is as strained and baseless as that rejected in *Simpson* v. *United States, supra.*

It is to be remembered besides, that the case does not present a case of resistance to the payment of a tax, but of the recovery of taxes voluntarily paid and that, therefore, the illegality of them should be shown not only by averment but by proof, not, as it is attempted to be, by assertion and speculation. It is true that it is averred that prior to July 1, 1902, the amount of claims against the estate had not been ascertained and that there was responsibility upon the trustees and legatees to make a return of the whole or ratable portions of the legacies to the extent that the sums remaining in the estate should be insufficient to satisfy all valid claims. It is conceded, however, the contingency of this might have terminated August 1, 1902, and while it is averred that the clear value of the interests of the legatees was at all times prior to July 1, 1902, uncertain and indefinite, and still is so, there stand in opposition the facts of the case and the refutation that an estate of the net personal value of nearly eight million dollars was or is in danger of embarrassment by the payment of legacies of less than one million dollars. And we have seen that the executors who had knowledge of the condition of the estate, and all that it might be made subject to, did not hesitate to make a return of the legacies to the Collector of Internal Revenue and pay the taxes thereon. The petition in this case was filed in the Court of Claims June 23, 1916, fourteen years after the commencement of the administration of the estate and nearly as long after the time of presentation of claims against it, and the record shows that the total of the claims and expenses of administration, including funeral expenses, amounts to the sum of $235,700. In the face of this exhibition we are asked to speculate upon possibility of the existence of liabilities that fourteen years have not developed.

*Judgment affirmed.*