Geaham, Judge,
delivered the opinion of the court:
This is an action to recover a legacy tax alleged to have been erroneously assessed and collected under the provisions of section 29 of the act approved June 13, 1898, 30 Stat. 448, and certain acts amendatory thereof. The petition was filed January 26, 1916, nearly 15 years after the commencement of the administration of the estate and about as long after the time for presenting claims against it.
Defendant demurred to the plaintiffs’ petition, and the court entered the following order on March 12,1917:
“ The within demurrer is overruled without prejudice; but it is ordered that no testimony be taken herein except upon the question of the amount of the residuary legacies not distributed until after July 1, 1902.”
Thereafter evidence was taken.
The plaintiffs’ requests for findings of fact and brief were filed on January 17, 1918. On March 20, 1918, proceedings in the case were suspended upon a showing to the court that one of the plaintiffs, Anna Woerishoffer, was held to be a German subject and an alien enemy, and the case was remanded to the general docket. On November 14, 1921, a treaty of peace having been ratified between the German Government and the Government of the United States, the *421 President- of the United States issued a proclamation declaring that the war between the two countries terminated on July 2, 1921. Thereupon, the case came on to be heard in regular course.
The testator, Oswald Ottendorfer, died on December 14, 1900, being at the time a resident of the State of New York, leaving a last will and testament, dated May 22, 1891, and codicils dated May 25,1892, November 29,1897, and October 30, 1900, all of which were admitted to probate and record on March 24, 1901, on which daté letters testamentary were granted to Anna Woerishoffer, Lewis Cass Ledyard, and Julius W. Brunn (since deceased), by the surrogate’s court in and for the county of New York, in said State. By said last will and codicils the testator made various specific bequests and left all of the residue of his estate share and share alike to three stepdaughters, Emma Schalk, Mathilde Biedei von Biedenstein, and Anna Woerishoffer.
Annibel, Baroness von Leitenberger, Edward Uhl, Antoinette Woerishoffer, Emma Carola Woerishoffer, Eleanora Stabler, Emma Schalk, Mathilde Biedl von Biedenstein, and Anna Woerishoffer, legatees named in said will, survived the testator and were strangers in blood to him.
Said will and codicils also provided that all succession, legacy, or inheritance taxes that should be due or payable by law on any legacy passing under said will or codicils should be deducted from and paid out of the residuary estate, so that all legatees should receive their legacies free of all such taxes.
By an order of the surrogate’s court entered on May 8, 1901, the executors published the statutory six-month notice to creditors of the estate requiring them to file their claims with the executors on or before November 16,1901.
The plaintiffs alleged in their petition that due to the character of the assets of the estate and circumstances of necessity controlling the administration and proceedings in the surrogate’s court regarding the basis for determining the value of certain of the assets, it was impossible on or before July 1, 1902. to determine the clear actual net value of said assets or of the residuary estate, or the actual or clear value of the legacies to be derived from the latter.
*422 A part of the assets consisted of- personal property which included a large number of bonds and shares of the capital stock of railroads and other corporations, the total par or face value of which bonds and shares of stock amounted to $3,260,748.89, while the actual clear value of most of these bonds and shares of stock was not the same as the par or face value, and this actual clear value could not be determined except by inquiry and investigation and the consideration of evidence thereon. Among the assets were certain capital stock of the New York Staats Zeitung, a daily newspaper published in the city of New York, and a certain contract with Herman Kidder, who was financially embarrassed when this contract was made. The value of this contract was uncertain and problematical on December 14, 1900, and at all times thereafter until July 1, 1902. The value of the contract depended at all times upon the ability of Kidder to make said newspaper earn a profit above its necessary expenses. The contract was a specific bequest to the residuary legatees of equal interest in said contract and did not form part of the residuary estate.
Prior to July 1, 1902, the executors paid all of the legacies except those springing from the residuary estate and each of the residuary legatees prior to that date received securities which the legatees accepted at certain values, and these added to the cash paid each legatee made a total payment to each legatee of $910,000.
No further or complete distribution of the'residuary estate was made by executors until after July 1, 1902, for the alleged reason that the estate would be liable for payment- of a New York State transfer tax and Federal inheritance tax, together with other expenses and fees of administration of the estate, and that the exact amount of the residuary estate which would be left for distribution for. this reason could not be determined prior to July 1, 1902.
On March 7, 1902, the plaintiff, Lewis Cass Ledyard, as executor, filed an affidavit in the surrogate’s court to which were attached schedules containing a description of all the property owned by the testator at his death, which had come to the knowledge of said executor, together with the estimated value of the personal property at that time, and also *423 the range of quotations of decedent’s stocks and bonds for a period of three months preceding his death; also statements of the decedent’s debts, payments for administration expenses, the estimated commissions of the executors and future administration expenses, and the names and addresses of the legatees, with descriptions of their respective legacies. On June 5, 1902, the appraiser appointed by the surrogate’s court filed his report appraising the property of the decedent, and on July 16, 1902, the surrogate entered his order assessing the New York State inheritance tax on the property of the decedent.
Pursuant to the act of June 13, 1898, 30 Stat. 448, and amendments thereto, the executors of said estate prepared and executed a schedule or return of legacies arising from said estate, which was filed by them with the Commissioner of Internal Revenue on November 7, 1902, stating taxable legacies with rates of tax thereon. In said return the total appraised value of the personal property of the estate was given as $4,371,947.90 and the total amount of debts and expenses for which the personal estate was liable at $298,446.12. This return was examined and approved and assessment made thereunder by the collector of internal revenue on the 10th day of December, 1902. On the same day the amount of tax indicated in said return as being due, namely, $556,495.27, was paid by the executors without protest. No legacy tax was assessed by the collector of internal revenue prior to July 1, 1902, on any of the legacies arising under said will and codicils. The values assigned by thfe Commissioner of Internal Revenue for the proposed legacy-tax assessment to the various stocks and bonds distributed by the executors to the residuary legatees were the same values assigned thereto by the executors in their said legacy-tax return of November 7,1902.
The issues involved here are:
Was the tax here collected imposed under section 29 of the act of June 13, 1898, and amendments thereof prior to the taking effect of the act of April 12, 1902, though no assessment was made until after July 1, 1902, at which date the former act took effect?
*424 If the tax was “ imposed,” there arises a further question whether the assets paid to the residuary legatees prior to July 1, 1902, in part satisfaction of the residuary legacies vested in said legatees in possession or enjoyment prior to July 1, 1902, under the provisions of section 3 of the act of June 27, 1902.
There is the further question, where the required time has elapsed to give the legatees and distributees a right to demand payment of their legacies and where the assets within the lands of the executors are amply sufficient to pay all known liabilities, including expenses of administration, State and Federal taxes, attorneys’ fees, etc., whether the fact that these liabilities were not definitely and finally determined on July 1, 1902, and that other liabilities might arise subsequently to that date is of itself sufficient to convert the legatees’ right to the property in the hands of the executors into a contingent interest, though otherwise it would be an interest vested in enjoyment and possession, and subject, therefore, to tax under section 29 of the act of June 13, 1898.
The one year within which executors were allowed by the statute of New York for settling said estate before the right to demand payment of legacies by legatees expired on the 24th day of March, 1902.
The six-month period for presentation of claims expired on November 16, 1901, and the only claims upon the estate so far as was known remaining to be paid on July 1, 1902, were the New York State transfer tax, the Federal inheritance tax, together with attorneys’ fees and other expenses of administration.
Subsequent to July 1, 1902, and during the years 1902, 1903, 1905, and 1908 Emma Schalk received on account of the residuary estate cash distributions amounting to $210,-953.66, and Mathilde Eiedl von Kiedenstein received during the same years similar cash distributions to the same amount, and Anna Woerishoifer received cash distributions amounting to $210,953.65, a total of $632,860.97.
This is not a case of resistance to the payment of a tax, but a suit for the recovery of taxes voluntarily paid, and the
*425 illegality of them should be shown not only by averment but by proof — not by assertion and speculation.
It is unnecessary to review the provisions of the act of June 13, 1898, 30 Stat. 448, and the effect thereon of the repealing act of April 12, 1902. Suffice it to say that where there was a “ liability ” existing under the former act at the time of the passage of the repealing act such liability was not affected by the latter and that a tax imposed prior to the passage of the repealing act was such a liability. Hertz v. Woodman, 218 U. S. 205.
The latter case also held that a tax is imposed when a legacy vests in possession or enjoyment and that upon the passing by death of a vested right to the immediate possession or enjoyment of the legacy or distributive share there was imposed a tax or duty upon every such right of succession, and that this tax or duty was saved by the saving clause of the repealing act of April 12, 1902.
It is not disputed that a tax may be imposed without assessment and an assessment is not a prerequisite to the imposition of a tax. While some taxes may require assessment and may not be collected until assessed, this does not prevent Congress from imposing a legacy tax until after it has been assessed. If the act imposed a tax, an assessment is a matter of routine which does not alter the effect of its imposition. To impose a tax means to levy it. The imposition of the tax and its maturity are distinct and separate things. It is well known that it is not customary to make a tax due and enforceable upon the day of its imposition. Cochran v. United States, 254 U. S. 387, 391; Westus v. Union Trust Co., 164 Fed. 795.
The tax is on the right of succession, and when by death there passes a vested right to the immediate possession or enjoyment of a legacy or distributive share there is imposed a tax under the act of June 13, 1898. Hertz v. Woodman, supra. So that it follows that the tax collected in this case was imposed under section 29 of the act of June 13, 1898.
We next approach the question of whether under the terms of this will the property transferred to the residuary legatees prior to July 1, 1902, in partial satisfaction of their residuary legacies vested in possession and enjoy *426 ment prior to July 1, 1902, under the terms of section 3 of the act of June 27, 1902. Said section of that act provided as follows:
“ * * * the Secretary of the Treasury be, and he is hereby, authorized and directed to refund * * * so much of said tax as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two.”
Said act further prohibits the assessment or imposition of any tax under the act of June 13, 1898, upon — ■
“ * * * any contingent beneficial interest which shall not become absolutely vested in possession or enjoyment prior to said July first, nineteen hundred and two.”
“ Vested in possession and enjoyment ” has the same meaning as the' word “ vested.” United States v. Jones, 236 U. S. 106; MoCoach v. Pratt, 236 17. S. 562, 566.
A contingent interest is one thing and a vested interest subject to divesture is another. The law uses familiar legal expressions in their familiar legal sense, and the distinction between a contingent interest and an interest subject to be divested is familiar to the law. As to that part of the property transferred by the executors prior to July 1,1902, to the residuary legatees, there can he no question under the decisions that it vested in possession and enjoyment prior to July 1, 1902. Ilenry v. United States, 251 TJ. S. 393; Cochran v. United States, supra. See also Tifany v. United States, Court of Claims No. 33685.
We next approach the question of whether the amount of residuary legacies distributed after July 1, 1902, is subject to tax.
It will be seen that the residuary legacies here were vested in possession or enjoyment; that a vested legacy subject to divesture is not a contingent interest. But, aside from this, under the statute of New York if a year had expired from the commencement of the administration — and here it expired March 24, 1902 — the legatees have a right to demand and proceed for collection of their legacies. During this period executors have the right to withhold payment, so that prior to July 1,1902 there is no doubt about the interest being vested and the liability of the executors to pay the lega *427 cies, provided tliere were sufficient funds in hand with which to do it.’ It is admitted that sufficient funds were in hand, and that all of the known debts except as heretofore stated had been paid and the time for filing claims had expired nearly nine months before, and that the only known debts and liabilities were the State and Federal taxes, attorneys’ fees, and certain expenses of administration. The fact that these had not been detei'mined .and that the sum necessary to meet them had not been fully and exactly ascertained is not sufficient to turn into a contingent interest an interest which is already vested in enjoyment and possession and therefore subject to tax under the act of June 13, 1898. Tire mere fact that the executors concluded to keep a fund on hand to meet certain unknown chances or claims that might arise can not of itself divest this vested interest of the legatees nor turn it into a contingent interest.
This court said in Carleton v. United States, 51 C. Cls. 60, 65:
“ * * * in order to make a legacy taxable under it, it is only necessary that it should pass out of the hands of the executors into the possession or enjoyment of the legatees named, subject to no contingency or reservation.”
These legacies under the will were subject to no contingencies or reservations.
That, there were abundant funds to meet all these unpaid obligations is shown by the fact that after the 1st of July, 1902, the executors distributed to the residuary legatees the sum of $632,860.97. So it is apparent that there were abundant assets in hand to pay these legacies on the 1st of July, 1902, and a mere precautionary state of mind of the executors as to future uncertainties is clearly not enough to turn this vested interest of the, legatees into a contingent one. Simpson v. United States, 252 U. S. 547. The illegality of the tax has not been proved.
It follows that the interest of the residuary legatees here was legally assessed and the tax thereon legally collected and that the plaintiffs can not recover. The petition should, be dismissed, and it is so ordered.
Hat, Judge; Downey, Judge; Booth, Judge; and Campbell, Chief Justice, concur.