ERNEST M. BULL, EXECUTOR, ESTATE OF ARCHIBALD H. BULL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6888. Promulgated August 8, 1927.

1. Estate tax accrues at time of death and not when payable.

2. The word "accrue" has no definite meaning but must be interpreted in accordance with the statutory requirement that the accounts must clearly reflect income.

3. Estate tax and income tax are different in kind and incidence and are not mutually exclusive because imposed in respect of the same matter. Such double tax is not invalid.

*Conover English, Esq.,* for the petitioner.
*A. R. Marrs, Esq.,* for the respondent.

Deficiency of $261,212.55 income tax for the period February 13, 1920, to December 31, 1920. Respondent (1) disallowed the deduction of estate tax, and (2) included in gross income an amount which, by virtue of testator's partnership agreement, was received at the end of the period equal to the amount of testator's share in partnership earnings had he lived.

FINDINGS OF FACT.

Archibald H. Bull was a member of the partnership of A. H. Bull & Co., ship agents and brokers. The partnership had been in existence since 1900, and made a profit each year. It was agent for several steamship companies and also for the United States Shipping Board in the operation of some of its ships. Its business was done on a commission basis. Its books were kept on the cash receipts and disbursements basis.

The partnership agreement provided that in the event of the death of any partner his estate should receive the proportionate share of the partnership profits which the partner would have received had he lived for the remainder of the year in which he died.

Archibald H. Bull died February 13, 1920. The executors of his estate immediately placed the accounts of the estate "upon the accrual basis."

The decedent's share in the profits of the partnership which had been earned before his death was $24,124.20. This amount appeared to his credit on the accounts of the partnership at the date of his death. The share of the profits from the date of his death to December 31, 1920, calculated in accordance with the above agreement was $200,117.09. The executors, on the original return of the income of the estate, without consulting counsel, included in the income of the estate for the period from February 13 to December

31, 1920, the amount of $200,117.09. The respondent has included this amount in income in computing the deficiency here involved.

In making return of the Federal estate tax the executor included $24,124.20 in the gross estate as the value of decedent's undivided interest in the partnership. The respondent increased the value to $235,202.99, which included the above amount of $200,117.09.

Subsequent to the filing by the estate of its income-tax return for the period from February 13 to December 31, 1920, A. H. Bull & Co. received stevedore commissions for work done during that period, the decedent's share of which was $12,601.70. This was paid to the estate. After an investigation, a report by a revenue agent was made eliminating this amount from income for the year 1921, in reliance on the action of respondent in including the amount of $235,202.79 as part of the estate.

Federal estate tax was paid as follows: June 17, 1921, $250,000; August 10, 1921, $86,264.66; total, $336,264.66.

The amount of estate tax was finally determined to be $312,127.17, and the difference was refunded. The respondent has not allowed the amount of the estate tax as a deduction from the income of the estate for the period from February 13 to December 31, 1920.

OPINION.

STERNHAGEN: The testator died on February 13, 1920, and his executor immediately placed the accounts of the estate " upon an accrual basis." The estate tax was not paid until 1921. The first of the two issues is, whether the net income of the estate for the period February 13, 1920, to December 31, 1920, inclusive, should be determined by deducting the Federal estate tax imposed under Title IV, Revenue Act of 1918. The petitioner says it should, and that the respondent has erroneously held that the estate tax accrued in 1921 and hence should not be deducted in 1920.

When the petition alleged and the answer admitted that the books of the estate were immediately placed " on an accrual basis," we construe this to mean a method of accounting other than that of actual receipts and disbursements which clearly reflected the income, as provided by section 212 (b), Revenue Act of 1918. Although the statute omits recognition of any so-called " accrual " basis or method, *United States* v. *Anderson*, 269 U. S. 422; 5 Am. Fed. Tax Rep. 5674, it will be clear from what follows that no issue is made except to determine whether under such a method the date of death fixes the time of deduction.

The estate tax was levied under the Revenue Act of 1918. Section 401 imposes the tax " upon the transfer of the net estate of every decedent dying after the passage of this Act." Section 404

provides for a return to be filed by the executor at a time required by regulations, which time was fixed by article 77 of Regulations 37 at within one year after death. Section 406 provides " That the tax shall be due one year after the decedent's death * * *." (Article 90 of Regulations 37 provided, " The tax is due and payable one year from the date of death.")

The Revenue Act of 1918 imposed the income tax in Title II. By section 219 (a) (1) it was imposed on " income received by estates of deceased persons during the period of administration or settlement of the estate," which income was, by section 219 (b), to be " computed in the same manner and on the same basis as provided in section 212," (with unimportant exceptions) i. e., applicable to individuals. Thus the estate was entitled to the deduction provided by section 214 (a) (3), " Taxes paid or accrued within the taxable year imposed (a) by the authority of the United States, except income, war-profits and excess-profits taxes * * *." The estate tax is within the last-quoted provision, and its deductibility is settled, *United States* v. *Woodward*, 256 U. S. 632; 3 Am. Fed. Tax Rep. 3119; but it must now be decided whether the estate tax accrued, for the purpose of the statutory deduction, in the income-tax period for which the executor made his first return for the estate or the period within which the estate tax became due under the statute.

A study of the multitude of decisions, treatises, and variously expressed views, and our experience in the consideration of many cases presented to this Board in which the word is either carefully or loosely used, disclose that the word " accrue " is fraught with confusion because it expresses no certain concept. In law, it has long been used in respect of rights and obligations which are said to accrue when they become enforceable. In accounting, it may be variously used with equal authority to refer to a right or liability fixed in amount, or certain in all respects except amount, or to an apportionment of a right or liability which runs hand in hand with a matter upon which it depends, or to a reserve in anticipation of an event, sometimes certain and sometimes uncertain. Other connotations will occur, but these are sufficient to indicate that there is little in common among the significations recognized. One thing is clear—that the word implies the exclusion of " received " or " paid," or a right or liability discharged. But short of this, what is meant when an item is accounted for as accrued depends upon the system of accounting in which it appears and the breadth of the accountant's concept.

When, therefore, it becomes necessary to interpret the word as it appears in the revenue act, the interpretation can not be fixed by definition, for this would imply a precision of congressional inten-

tion at variance with the more fundamental purpose to tax that which a proper system of accounting should clearly reflect as net income. In the Revenue Act of 1918 Congress sanctioned the determination of net income in accordance with the taxpayer's regular method of accounting, subject however to the necessary safeguard that the method should clearly reflect income. No method which fails to clearly reflect income has any justification or sanction under the law. The determination of income is a complex problem, and the question whether the method of accounting clearly reflects income is likewise a complex problem; and in neither case is the solution simplified by attributing any magic to the word "accrue." Given a method which, as concededly in this case, on the whole clearly reflects income, it is necessary, when determining whether an item accrued, to determine in essence whether its deduction during the period under consideration is consistent with the clear reflection of income or would bring about a distortion.

This is substantially in accordance with the process by which the Supreme Court arrived at its decisions in *United States* v. *Anderson, supra,* and *American National Co.* v. *United States,* 274 U. S. 99, as we understand those decisions. In the *Yale & Towne* case the court expressly put aside any technical significance of accrual, and in effect held that a tax on income from munitions should, under the method employed, be accounted for during the period of the derivation of the income to which the tax was directly related. In the *American National* case, bonuses incurred were held deductible as expense in the same year as the income to which they were attributable. In both these cases the Supreme Court, although expressly recognizing that the word "accrued" had been in law applied to an item "due and payable," yet held that this signification should properly give way to the clear reflection of income under the accounting method employed.

For the purpose of the present case, however, these decisions are relevant principally because they put aside any technical definition of accrual, for they both involve situations of a kind heretofore referred to where the deduction in question is directly related to the continuing process of earning the income taxed. In the present case the deduction is of an isolated item not connected with the gross income either as necessary to its earning, (as an expense) or as resulting from it (as an income tax). The reasoning by which the deductions were offset against the correlative gross income so as to clearly reflect the net, is to a substantial degree absent from the case at bar. The estate tax, being an excise or death duty, measured by the value of the decedent's net estate and imposed by reason of the transmission from the dead to the living, is in its nature isolated from the income

of any period, and hence the considerations which determine the period of its accrual must rest on other grounds than those found in the two cases cited.

The decision of the Supreme Court in *United States* v. *Woodward, supra,* contains a statement that the estate tax of the 1916 Act " not only ' accrued,' which means became due  *  *  *." This has sometimes been looked upon as a decision that " accrue " means to become due and payable. But in two later cases in which the decision was urged as authority on the point, the court has expressly held this language to be *obiter dictum. United States* v. *Anderson, supra,* and *United States* v. *Mitchell,* 271 U. S. 9; 5 Am. Fed. Tax Rep. 6008. It may reasonably be likewise inferred that no authority is to be attributed to the statement at the beginning of the opinion in *United States* v. *Mitchell, supra,* that " The Federal estate tax accrued one year after her death," for in that case the question directly raised was whether the time of payment of the estate tax determined its deductibility in computing the income upon the basis of actual receipts and disbursements. The *Appeal of Henry Reubel,* 1 B. T. A. 676, is distinguishable for the same reason. Other decisions of the Board such as *Russell Milling Co.,* 1 B. T. A. 194; *L. S. Ayers & Co.,* 1 B. T. A. 1135; *Guarantee Construction Co.,* 2 B. T. A. 1145, are also readily distinguishable from the case at bar because they involve the deduction of taxes of a correlative nature, like income and profits taxes, and not isolated or occasional taxes. *Charles L. Harris, Administrator,* 5 B. T. A. 41, and *Catherwood* v. *United States,* 291 Fed. 560; 2 Am. Fed. Tax Rep. 2002, are not germane because for the purpose of the decision it was only necessary to consider whether the estate tax could be regarded as imposed or accrued before the death which was the occasion for its exaction. In *E. T. Earl,* 4 B. T. A. 322, the estate in computing income on the accrual basis sought to deduct the estate tax when paid in a tax period later than that including the statutory " due " date one year after death. The Board held against the estate, and it was unnecessary to consider the question now submitted.

*Hertz* v. *Woodman,* 218 U. S. 205; 5 Am. Fed. Tax Rep. 5534, under the Revenue Act of 1898, involved a question strikingly similar to that before us. A legacy tax was imposed by section 29 and was by section 30 made due and payable one year after death. The testator died March 15, 1902. Effective July 1, 1902, section 29 was repealed, although the taxes " imposed " prior to the effective date of the repeal were saved from repeal. It was contended for the taxpayer that in view of the fact that the tax was due and payable in one year after the death of the testator, namely, March 15, 1903, it could not be regarded as imposed until that time and

hence was not saved from repeal. The Government contended that the tax was imposed simultaneously with death and was therefore not affected by the repealing statute. The legacy in question clearly vested at death, which caused the court to distinguish *Mason* v. *Sargent*, 104 U. S. 689; 5 Am. Fed. Tax Rep. 5545, and *Vanderbilt* v. *Eidman*, 196 U. S. 480; 5 Am. Fed. Tax Rep. 5525. The court said:

* * * The law, then [at death] unrepealed and in full force, operated to fasten, at the moment this right of succession passed by death, a liability for the tax imposed upon the passing of every such inheritance or right of succession. The time for scheduling or listing was practically identical with the time for payment, and the listing or scheduling was required to be done by the executor charged with payment, but might be and was postponed for reasons of grace and of convenience. That is almost universal under any taxing system. The liability attaches at some time before the time for payment. But the liability for the payment of the tax exacted under section 29 of the act of June 13, 1898, accrued or arose the moment the right of succession by death passed to the defendants in error, and the occurrence of no other fact or event was essential to the imposition of a liability for the statutory tax upon the interest thus acquired.

The court then considered the structure and history of the statute and held that the separate provision making the tax due and payable one year after death was remedial or procedural only and did not affect the liability, which was fixed at the time of death by section 29.

Under the Revenue Act of 1918 the same situation might arise, in respect of an estate tax upon the estate of a decedent dying within one year prior to the repeal of Title IV on November 23, 1921, by section 1400 of the Revenue Act of 1921. Subsection (b) saved from repeal the assessment and collection " of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect." Whatever may be said of the use of the word " imposed " in the repealing Act of 1902 and the word " accrued " in 1400 (b), Revenue Act of 1921, it seems clear that the logic of the decision in *Hertz* v. *Woodman, supra*, is essentially applicable to a situation arising under the latter provision. The fact that the 1898 Act imposed a legacy tax and the 1918 Act imposed an estate tax is unimportant, *Knowlton* v. *Moore*, 178 U. S. 41; 3 Am. Fed. Tax Rep. 2684; *New York Trust Co.* v. *Eisner*, 256 U. S. 345; 3 Am. Fed. Tax Rep. 3110. The 1918 Act is similar to the earlier act in that the one year for collection was provided in a separate section (§406) from that of imposition (§401), and hence may likewise be regarded as adjective rather than substantive. The *Hertz* case has been followed in *Cochran* v. *United States*, 254 U. S. 387; 3 Am. Fed. Tax Rep. 3092, and in many decisions of lower Federal courts, and in view of the removal of any doubt which may have been suggested by the *obiter*

*dictum* of *United States* v. *Woodward, supra* (see *Catherwood* v. *United States, supra*), it remains authority for the view that death duties are imposed at death, become a liability and accrue at that time, and survive a subsequent repeal of the taxing statute, notwithstanding that they become payable thereafter.

A situation sufficiently similar to be of interest is found in *New Jersey* v. *Anderson*, 203 U. S. 483. Under the Federal Bankruptcy Act of 1898, section 64 (a), preference was given to " taxes legally due and owing." The contention was made that a State franchise tax the amount of which was based upon capital stock outstanding January 1, return of which was required in May, payment in June, upon failure of which an assessment in July, was not due and owing until after April, the date of bankruptcy. The court held that the tax was legally due and owing although not collectible, and said:

> The amount claimed for the year 1903, it is insisted, had not accrued at the time of the adjudication in bankruptcy, which was on April 23, 1903, the return being made on May 2, 1903, and the assessment was not made until July 1, 1903; but the annual return required to be made to the board, on or before the first Tuesday in May, is upon the basis of the capital stock issued and outstanding the first of January preceding the making of the return. The bankrupt act requires the payment of all taxes legally due and owing. We think the tax thus assessed upon that basis was legally due and owing, although not collectible until after the adjudication.

It will be noted that the court made no distinction between the use of the word " accrued " and the words " legally due and owing," and tacitly recognized that by deciding the question in one form it was likewise deciding it in the other. The franchise tax was determinable by a fact at a time certain. The time of payment or collection although expressly fixed at a later date was held not to be a factor of its accrual. This was approved in *New York* v. *Jersawit*, 263 U. S. 493.

Since a tax fixed as to time and occasion, such as the estate tax, is certain enough to survive either repeal or bankruptcy, irrespective of its collection later, and the time it becomes payable is merely a remedial or procedural matter of sovereign grace, there is no clear reason in the Revenue Act to say that the emphasis should be shifted to the time fixed for payment so as to require its deduction only at that time.

The suggestion arises that it is difficult to determine the amount of the estate tax within the period when the first income tax of the estate must be computed and the return audited. This might well give pause. But it is usually no more difficult than the computation of the munitions tax involved in the *Yale & Towne* case or that required by section 1207 of the Revenue Act of 1926 and the

earlier regulations, and such difficulty as there may be is not sufficient to counterbalance the considerations already set forth.

We hold that for the purpose of the deduction allowed in section 214 (a) (3) of the Revenue Act of 1918, the estate tax of Title IV accrued at the date of the death of testator and may be deducted by the estate in the taxable period of the death, if this is in accordance with its method of accounting, so as clearly to reflect its income. In view of the agreement of the parties as to the method of accounting, we reverse the holding of the respondent on this issue.

The second question when correctly stated is whether the amount received by the estate from the partnership, in lieu of the distributive share of the testator, if living, in the partnership earnings for the period February 13, 1920, to December 31, 1920, is income of the estate. The difficulty inherent in this question has caused both parties to shift their views at one time or another since the original return was filed. The estate at first returned the amount as income, which the respondent now contends was in accordance with the correct view. Then the Commissioner held that the amount was within decedent's gross estate subject to estate tax. Later he was inclined to hold it to be income, but when petitioner protested and said that it had already been taxed as corpus of the estate, he said he would adhere to the view that it was corpus. But some time thereafter he decided it was income and so determined the present deficiency. The petitioner complains bitterly of this. Deplorable as it may be, this can not be determinative of petitioner's statutory liability, and since the jurisdiction of the Board is properly invoked we must proceed to apply the statute to the facts in evidence and redetermine the deficiency as a matter of law. Nor is it decisive that the petitioner's time for refund may have expired as to a possible overpayment. Whether refund is barred by limitation is not clear from the evidence.

The petitioner takes it as clear in principle that the amount in question can be only either corpus of the estate transferred at death or income of the estate after death, and that it can not be both. From this it is argued that since it was properly held to be corpus, it can not be income. But there is no warrant for the assumption of mutual exclusion. The two taxes are different in kind and incidence, and if when properly applied they each produce revenue in respect of the same matter, that fact alone does not militate against either levy. Double tax is of course not to be presumed (see *Nichols* v. *United States*, Court of Claims, April 4, 1927; 6 Am. Fed. Tax Rep. 6592) and ought to be avoided if doubtful, but if clear it is not invalid. This may be illustrated by the plain overlapping of the capital stock tax and the income tax. The former is measured by the actual value of capital stock. Such value frequently reflects

earnings which at the same time measure the income tax. But the earnings when derived are not less subject to income tax because they have given taxable value to capital stock. A similar impinging of the inheritance tax and the income tax upon the same factor of value will be found in the two decisions of the Supreme Court in *United States* v. *Fidelity Trust Co.*, 222 U. S. 158, and *Irwin* v. *Gavit*, 268 U. S. 161; 5 Am. Fed. Tax Rep. 5380. In the former case, decided under the 1898 Legacy Tax Act, Mr. Justice Holmes held that a legacy of a vested life estate in a fund the clear value of which could be determined by mortality tables and a discount rate, was taxable to its full value at the date of death. In the latter case, under the Revenue Act of 1913, the same learned Justice held the income subject to tax notwithstanding the right to it was an equitable interest in the fund and the statute expressly exempted bequests from income tax. It may thus be entirely possible that a tax in one form is imposed upon the present value of a right of expectancy and a tax in another form is imposed upon the income when derived,—that income may be subject to income tax even though its expectation had a value which was otherwise taxed. *Ernest P. Waud et al.*, *Executors*, 6 B. T. A. 871. See also *Bowers* v. *Taft*, 20 Fed. (2d) 561, indicating that a gift when sold may be taxed as income even though its value may be expressly exempt at the time of gift.

So while the issue is approached in full realization of the presumption against the hardship of double tax, *United States* v. *Supplee-Biddle Hardware Co.*, 265 U. S. 189; 4 Am. Fed. Tax Rep. 3989, it is necessary to determine whether, the facts considered, the estate is subject to income tax by reason of the $200,117.09 received from the partnership in view of the testator's agreement. The estate tax is not here under review and is not decided. The agreement itself is not in evidence, nor is the will, and the facts must be taken as they appear from the admitted allegation of the petition, as follows:

The decedent, Archibald H. Bull, was a member of the firm of A. H. Bull & Co., steamship agents and brokers. The agreement among the partners was that in the event of the death of any of the partners, his estate should receive his proportionate share of the profits of the firm which he would have received had he lived for the balance of the year from the date of death. The share of the decedent, Archibald H. Bull, for the period from February 13, 1920, to December 31, 1920, calculated on this basis was $200,117.09.

There are several nice questions to be found in this apparently simple statement of fact. It would be interesting to consider the nature of the right or interest, if any, of the testator during his life in the partnership earnings to be derived after his death, and also the nature and source of the right of the estate after his death. Assuming that each, the testator and his estate, had a right by virtue of the contract, it may be, either, that there was a transfer at death,

or a ceasing of one and a springing up of the other, such as in respect of life insurance or the exercise of a power of appointment.

These questions, however, need not be decided, because at best for the petitioner, such a decision would fall for lack of evidence to support it. Clearly the estate could in no event escape income tax on more than so much of the $200,117.09 as represented the capital at the date of death in the property therein which was transferred by decedent as part of his gross estate. The excess, at least, would be income. It can not be as a matter of law that the exact amount subsequently received measures the value of the capital transferred at death. Even if the amount to be received were definitely known, it would require discount; and certainly where indefinite and subject to the uncertainties of business earnings after the death of an active partner, its value at the time of death would, if measurable at all, be substantially different from the amount finally received. These uncertainties in valuation would appear immediately after any decision favorable to petitioner on the foregoing questions of law. Value is a matter of evidence and can not be decided otherwise. There is no evidence of such value, and hence no way of determining that any of the $200,117.09 is other than income as determined by respondent. The case of *United States* v. *Carter*, 19 Fed. (2d) 121, is different in at least one respect, that the amount held to be corpus of the decedent's estate·was his share in business acquired during his lifetime in which at his death there was an unquestioned right of his estate.

It is held that the estate tax is a proper deduction to clearly reflect income for the period February 13, 1920, to December 31, 1920, and that the full amount of $200,117.09 is within gross income of such period.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN concurs in the result only.