### O'BRIEN et al. v. STURGESS, Collector of Internal Revenue.

District Court, D. New Jersey.

Feb. 19, 1930.

H. Collin Minton, Jr., of Trenton, N. J., and Frank S. Bright and L. C. Connally, both of Washington, D. C., for plaintiffs.

Phillip Forman, U. S. Dist. Atty., of Trenton, N. J. (C. M. Charest, General Counsel, Bureau of Internal Revenue, and T. H. Lewis, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for defendant.

RUNYON, District Judge.

The above-entitled action was instituted in this court to recover the sum of $211,285.-57, together with interest, and claimed to have been erroneously assessed and collect-

ed under the Revenue Act of 1918 (40 Stat. 1057).

Mr. Roebling died May 29, 1921. The return filed by his executors for federal estate tax purposes showed $236,870.88 due, and this amount was paid in due course of administration in three installments.

Later, and because the Revenue Act of 1918, which was in force at the time Mr. Roebling died, had been repealed by the Revenue Act of 1921 (42 Stat. 227), before the time provided for the payment of the tax in the earlier act had arrived, the executors filed their claim for refund.

This claim the commissioner refused, and in consequence thereof the executors instituted their action.

The defendant demurred to the petition setting forth the above facts, argument has been had thereon, and the parties await the court's conclusions.

The portions of the two statutes involved, so far as they are pertinent to the matter in dispute, read as follows:

The first excerpt is from the Revenue Act of 1918 (chapter 18, 40 Stat. 1057, 1096).

"Sec. 401. That (in lieu of the tax imposed by Title II of the Revenue Act of 1916, as amended, and in lieu of the tax imposed by Title IX of the Revenue Act of 1917) a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, whether a resident or non-resident of the United States:" (Here follow the rates.)

The second is from the Revenue Act of 1921 (chapter 136, 42 Stat. 227, 320).

"Sec. 1400. (a) That the following parts of the Revenue Act of 1918 are repealed, to take effect (except as otherwise provided in this Act) on January 1, 1922, subject to the limitations provided in subdivision (b): * * *

"Title IV (called 'Estate Tax') on the passage of this Act; * * *

"(b) The parts of the Revenue Act of 1918 which are repealed by this Act shall (unless otherwise specifically provided in this Act) remain in force for the assessment and collection of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect, and for the imposition and collection of all penalties or forfeitures which have accrued or may ac-

crue in relation to any such taxes. In the case of any tax imposed by any part of the Revenue Act of 1918 repealed by this Act, if there is a tax imposed by this Act in lieu thereof, the provision imposing such tax shall remain in force until the corresponding tax under this Act takes effect under the provisions of this Act."

The question to be decided is whether or not in the case of a decedent who died less than one year prior to the passage of the Revenue Act of 1921, the liability of his estate to pay the federal estate tax imposed by the Revenue Act of 1918 was destroyed by the repeal of that act subsequent to decedent's death but before the tax, by the terms of the act, became due and payable.

Plaintiffs' claim for exemption from tax revolves largely around the meaning and construction to be given to the word "accrue" or "accrued."

By the terms of the Revenue Act of 1918, a tax is imposed upon the transfer of the net estate of every decedent who dies after its passage, and this tax is constituted a lien for ten years upon the decedent's gross estate. Therefore, since Mr. Roebling died after the passage of the 1918 Act and before its repeal, a tax was imposed upon the transfer of his net estate.

Construing practically identical language in the 1916 Act, the court in Page v. Skinner (C. C. A.) 298 F. page 731, at page 732, said: "The imposition took effect at the time of death and the tax became at once a lien on the property of the estate, enforceable by sale, if not paid, on proceedings in court."

The decedent's personal interest in his property ceased with his death and this death occurred while the 1918 Act was in full force and effect. And in speaking of the nature of the tax imposed under the provisions of the 1918 Act, Chief Justice Taft, in Y. M. C. A. v. Davis, 264 U. S. 47, at page 50, 44 S. Ct. 291, 292, 68 L. Ed. 558, says: "What was being imposed here was an excise upon the transfer of an estate upon death of the owner. * * * What this law taxes is not the interest to which the legatees and devisees succeeded on death, but the interest which ceased by reason of the death. Knowlton v. Moore, 178 U. S. 41, 48, 49, 20 S. Ct. 747, 44 L. Ed. 969."

Mr. Justice Holmes, in the case of Edwards v. Slocum, 264 U. S. 61, 62, 44 S. Ct. 293, 68 L. Ed. 564, in speaking of this tax, says: "But this is not a tax upon a residue, it is a tax upon a transfer of his net estate

by a decedent. * * * It comes into existence before and is independent of the receipt of the property by the legatee. It taxes, as Hansen, Death Duties, puts it in a passage cited in [Knowlton v. Moore], 178 U. S. 49, 20 S. Ct. 747, 751, 44 L. Ed. 969, 'not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death.'"

The nature of the tax being as above defined, viz., a tax on the interest which ceased by reason of the death of decedent, it follows that all that was required in this case to perfect such interest for the imposition of a tax was the death of Mr. Roebling, and with his death this tax came into being as a lien authorized by Congress and capable of discharge in but one of two ways, viz., through payment of the tax, or through appropriate congressional action.

It is the claim of the plaintiffs, and advanced by them as a reason for the return of this tax already paid by them, that in the wording and provisions of the 1921 Revenue Act, Congress has so legislated that the estate of Mr. Roebling has been freed of any and all liability for the payment of such tax and that in consequence such tax was paid in error and should be returned.

As heretofore stated, Mr. Roebling died May 29, 1921, at which time the provisions of the Revenue Act of 1918 were in full force and effect. Had there been no succeeding act employing the language of the Revenue Act of 1921, the question now under consideration would never have arisen.

The 1921 Act repealed that portion of the Act of 1918 which imposed an estate tax and provided for a different estate tax operative when the later act went into effect. In addition thereto, the Act of 1921 contained a so-called "saving clause," practically the same as that contained in the Act of 1918, and which apparently had as its design a continuing operation of all taxing provisions of the 1918 Act, except such as were being specifically repealed and not within the purview of the saving clause.

The language upon which the plaintiffs rely for their relief is that contained in section 1400 (b) hereinabove set forth, and their contention is that in this Act of 1921 there is no provision that the earlier act should remain in force for the "assessment and collection of all taxes," unless those taxes had accrued, and that inasmuch as Mr. Roebling died within one year prior to the enactment of the 1921 Act, no taxes had accrued against his estate, since they were not due and pay-

able until one year after his death and the repealer of the 1921 Act had been enacted during such intervening period.

In other words, their contention is that if Mr. Roebling had died at any time during the life of the 1918 Act prior to November 23, 1920, or after the enactment of the Act of November 23, 1921, his estate would be properly subject to tax, but because he died between November 23, 1920, and November 23, 1921, said estate is in no sense liable for such tax because the same was not due until May 29, 1922, under the provisions of the 1918 Act, "one year after the decedent's death," and on that date the Act of 1921 was in effect, providing only for the preservation of the lien of such taxes arising under the earlier act as had "accrued" by November 23, 1921.

This line of reasoning narrows the field of inquiry and presents for solution the simple question as to whether or not the tax here involved had accrued on November 23, 1921.

If it had so accrued, the payments heretofore made were proper and are not subject to return. If, on the other hand, the tax is to be considered as not having accrued until a year subsequent to Mr. Roebling's death, when it became due and payable, then the tax was improperly collected and should be returned.

While differing in certain respects from the case under consideration, there are yet many points of similarity in the case of Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 625, 54 L. Ed. 1001. This case had to do with a legacy tax imposed by the Revenue Act of 1898, and made due and payable one year after death. The testator died in March, 1902. The 1898 Act was repealed by a later act which became effective on July 1, 1902, but this later act by its provisions saved taxes which had been "imposed" prior to July 1, 1902.

Woodman's executors made the same class of objection to paying the tax in their matter as is made by the Roebling executors in the case now being considered, viz., that under the Act of 1898 the tax was not "imposed" and not a liability until it was due and payable.

In discussing this controversy, the court said:

"No further event could make their title more certain nor their possession and enjoyment more secure. The law, then unrepealed and in full force, operated to fasten, at the moment this right of succession passed by

death, a liability for the tax imposed upon the passing of every such inheritance or right of succession. The time for scheduling or listing was practically identical with the time for payment, and the listing or scheduling was required to be done by the executor charged with payment, but might be and was postponed for reasons of grace and of convenience. That is almost universal under any taxing system. The liability attaches at some time before the time for payment. *But the liability for the payment of the tax* exacted under § 29 of the act of June 13, 1898, *accrued or arose the moment the right of succession by death passed* to the defendants in error, and the occurrence of no other fact or event was essential to the imposition of a liability for the statutory tax upon the interest thus acquired.

"Much has been urged because the tax was not 'due and payable' when the repealing act took effect, and the contention is that because not 'due and payable,' no tax had been theretofore imposed within the intent of the saving clause. What we have already said answers this. But let us see the very unreasonable result which would ensue if we are required to say that by 'tax or duty imposed under § 29' Congress meant a tax or duty due and payable when the repealing act should go into effect.

"No one questions but that one effect of this saving clause would be to save any such tax as was 'due and payable' one year before July 1, 1902. This being so, it would be very unjust if the tax in the latter case is saved and the other remitted, inasmuch as the thing made subject to the tax would, in each case, be the same; namely, the transmission of a beneficial right to the possession and enjoyment of a legacy or distributive share at the death of a testator or intestate. In the one case, the tax paid upon the right passing by death would be preserved. In the other, a tax upon a like inheritance would be remitted. The only difference would be that, in one case, the time for payment had arrived, while, in the other, it had not, though, in the latter case, the ultimate obligation to pay was equally as certain and fixed as in the first case." (Italics ours.)

In the case of Flannery v. Willcuts (C. C. A.) 25 F.(2d) 951, 957, the court said: "The plaintiff also sued to recover the $2,011,060.96 that was paid by the administrator as an estate tax on more than $10,500,000 in value of property which Mrs. Hill owned and possessed at the time of her death. As to that it is argued that no estate tax had ac-

crued upon Mrs. Hill's estate under the Revenue Act of 1918 (40 Stat. 1057) at the time of its repeal by the Act of 1921 (42 Stat. 227), and that the repealing Act saved only *accrued* taxes. This same question, under Revenue Acts in like terms, was considered and decided by this court in Page v. Skinner (D. C.) 293 F. 468. We rejected the contention as unsound, for the reasons there stated. We therefore think the court did not err in denying relief in that respect."

And the language of the District Court in the case of Page v. Skinner, 293 F. 470, to which reference is hereinabove made, is as follows: "Counsel for plaintiff also suggests another construction of the two acts, which would result in a hiatus, the practical effect of which would be that this estate would wholly escape taxation. Such a proposition can only be sustained, where expressed by Congress in the most explicit terms. I find nothing to show that such was the intention of Congress, and in fact it is directly contrary to the legislative policy since this particular class of taxes was first created, and overlooks section 13 of the Revised Statutes (Comp. St. § 14 [1 USCA § 29]). If the act of 1918 had never been passed, then the former act would have applied without question, and under section 13 it did apply, as the repealing part does not 'expressly' otherwise provide. The plaintiff is in error in not distinguishing the mere administrative features of the act from the more important part that imposes the tax."

This last-mentioned case was affirmed by the Circuit Court of Appeals, as will appear by reference to 298 F. 731.

In the case of Guaranty Trust Co. of New York, as Executor, etc., of Roxy M. Smith, Dec'd, v. Commissioner of Internal Revenue, Docket No. 16038, U. S. Board of Tax Appeals, promulgated April 30, 1929, the Board in discussing a prior case, Ernest M. Bull, Ex'r, 7 B. T. A. 993, quoted the language used by it on that occasion, as follows:

"Under the Revenue Act of 1918 the same situation might arise, in respect of an estate tax upon the estate of a decedent dying within one year prior to the repeal of Title IV on November 23, 1921, by section 1400 of the Revenue Act of 1921. Subsection (b) saved from repeal the assessment and collection 'of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect.' Whatever may be said of the use of the word 'imposed' in the repealing Act of 1902 and the word 'accrued' in 1400 (b), Revenue Act of 1921, it seems clear

that the logic of the decision in Hertz v. Woodman, supra, is essentially applicable to a situation arising under the latter provision. The fact that the 1898 Act imposed a legacy tax and the 1918 Act imposed an estate tax is unimportant, Knowlton v. Moore, 178 U. S. 41 [20 S. Ct. 747, 44 L. Ed. 969]; 3 Am. Fed. Tax Rep. 2684; New York Trust Co. v. Eisner, 256 U. S. 345 [41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660]; 3 Am. Fed. Tax Rep. 3110. The 1918 Act is similar to the earlier act in that the one year for collection was provided in a separate section (§ 406) from that of imposition (§ 401), and hence may likewise be regarded as adjective rather than substantive. The Hertz Case has been followed in Cochran v. United States, 254 U. S. 387 [41 S. Ct. 166, 65 L. Ed. 319]; 3 Am. Fed. Tax Rep. 3092, and in many decisions of lower Federal courts, and in view of the removal of any doubt which may have been suggested by the obiter dictum of United States v. Woodward [256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131], supra (see Catherwood v. United States [(C. C. A.) 291 F. 560], supra), it remains authority for the view that death duties are imposed at death, become a liability and accrue at that time, and survive a subsequent repeal of the taxing statute, notwithstanding that they become payable thereafter.

"We are of the opinion that the tax imposed by the Revenue Act of 1918 upon the transfer of the net estate of the decedent, Roxy M. Smith, accrued at the date of her death within the meaning of section 1400 (b) of the Revenue Act of 1921, and that it was saved by that section."

Since the argument in this case, there have been at least two opinions delivered upon practically the same points which are here involved; one by the Court of Claims in the case of Howard M. Hanna, as Executor, etc., of H. Melville Hanna, Dec'd, v. United States, wherein the court speaks in part as follows:

"It will be observed that the argument of plaintiff is based upon a definition of the word 'accrued,' and it is claimed that the construction for which plaintiff contends is supported by the decisions of the Supreme Court in United States v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131, and United States v. Mitchell, 271 U. S. 9, 10, 46 S. Ct. 418, 70 L. Ed. 799. In connection with the application of these decisions some confusion of thought seems to have arisen. The question for determination in the case at bar is not how the word 'accrued' may have

been used in some part of the 1918 statute, but how it is used and what meaning should be given it in the provisions of the 1921 statute, which we are called upon to construe. When this is kept in mind, we think it will clearly appear that these cases do not support the position of plaintiff.

"The word 'accrue' as used in the law has two meanings: It is often applied to a present enforceable demand, and as often, if not more often means simply to arise or to come into existence. In Emerson v. The Shawano City, 10 Wis. 433, it is said: 'The verb "to accrue" is often and properly used to convey the same idea as the verb "to arise." * * * A cause of action may be said to arise, when the contract out of which it grows is entered into or made.'

"In Page v. Skinner, 298 F. 731, 734, the circuit court of appeals had occasion to pass on the meaning of a provision in the act of February 24, 1919, commonly referred to as the revenue act of 1918. The 1918 act by section 1400 (a) thereof repealed the estate tax of 1916, but in (b) of the same section provided: '(b) Such parts of Acts shall remain in force for the assessment and collection of all taxes which have accrued thereunder, and for the imposition and collection of all penalties or forfeitures which have accrued and may accrue in relation to any such taxes. * * *' (Italics ours.)

"Although the wording is slightly changed, there can be no question but that the word 'accrued' is used in the same sense as in the similar provision of the 1921 act, which has heretofore been set out, and the circuit court of appeals said further in the last-named case with reference to the 1918 act: 'Neither are we in doubt as to the meaning of the word "accrued," found in subparagraph (b); as contended by counsel amici curiæ, who appear for another estate in like conditions, that it is equivalent to *arising under* and refers to all taxes, including estate taxes, * * * and is not a restriction to those that were due and payable prior to February 25th.'"

In the case of Ewbank et al., Trustee, v. United States, 37 F. (2d) 383, in the Southern District of Indiana, the court, in an opinion delivered December 30, 1929, speaks as follows:

"The estate taxes, under the act of 1918, were due and payable one year from the date of decedent's death. There was, however, contained in the later act a saving clause, which is designated as section 1400 (b) of such act, which provides as follows: 'The

parts of the Revenue Act of 1918 which are repealed by this act shall (unless otherwise specifically provided in this act) remain in force for the assessment and collection of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect. * * *' 42 Stat. 320, 321.

"The construction placed upon the provisions of this saving clause will determine the sole question presented upon the demurrer in this case. If, as contended by the plaintiffs, the above saving clause is to be construed so as to relieve all persons from the payment of any estate taxes, who died within one year immediately preceding the 23d day of November, 1921, the date of the approval of the Revenue Act of 1921, then the demurrer must be overruled and the complaint held to state a cause of action.

"The saving clause in the act of 1921 applies to 'all taxes which have *accrued* under the Revenue Act of 1918,' and it is the contention of the plaintiffs that the word 'accrued,' as used in that clause, means that such taxes must have been *due and payable* at the time of the taking effect of the act of 1921, that is, on November 23d of that year. Since the taxes paid by plaintiffs were not *due and payable* until the expiration of one year from the date of the decedent's death, and the taking effect of the act of 1921 was within that year, the plaintiffs contend that the saving clause in the act of 1921 does not apply, and that no estate taxes should have been paid, such estate taxes not being *due and payable* at the time of the taking effect of such act. This court is called upon to define the meaning of the word 'accrued,' as used in the saving clause.

"Plaintiffs contend that the meaning of the word 'accrued,' as used in such saving clause, must be 'due and payable,' and cite United States v. Woodward et al., 256 U. S. 632, 65 L. Ed. 1131, 41 S. Ct. 615, and United States v. Mitchell et al., 271 U. S. 9, 70 L. Ed. 799, 46 S. Ct. 418, in support thereof. It will be observed, in the consideration of these cases, that the question determined by the court was whether or not the estate taxes paid were allowable as deductions from income tax returns, under the acts of 1916 and 1918 * * *. The question to be here determined is not how the word 'accrued' may have been used in some sections of the acts of 1916 and 1918, but how such word was used in the section of the act of 1921, which is to be construed in this action. In some sections of the Revenue Act, Congress has specifically defined the meaning of the word

'accrued,' as being the due date, as applied to the particular section or paragraph in question, thereby recognizing the fact to be that such word does not always mean the due date. Section 214(a)(3), 42 Stat. 239. The fact that the word 'accrued' is not defined by Congress in section 1400 (b) of the Revenue Act of 1921 leads to the inevitable conclusion that it must be defined so as to give effect to the intent of Congress when such section was enacted. It cannot be seriously contended that Congress, by the enactment of the later law, intended to relieve the estates of all persons dying within a single year, that is, within one year immediately preceding the 23d day of November, 1921, from the payment of any estate taxes, while the estates of all persons dying prior to said one-year period and immediately following said one-year period are subject to the payment of such taxes."

In my opinion, Mr. Roebling's death was the one and only thing necessary to bring this tax into full being and impose it as a lien upon his estate. In other words, that at the very instant he died the tax accrued and thus met the conditions imposed by the statute. The fact that the representatives of the estate are allowed a year within which to pay the tax appears to me to be nothing more nor less than a matter of grace, and the voluntary establishment of a time limit within which the government agrees to refrain from pressing for payment.

To me, it is inconceivable that Congress could have intended to effect so inequitable a result as would be the case if petitioners' theory and contention be correct, viz., to exempt from all taxation whatever the estate of those decedents who happen to have died within the narrow limits of a certain single year and to impress such tax unabated in any way upon the estates of those who may have died one day prior, or one day subsequent, to that certain year.

True, such language might have been used by Congress in its repealing and saving sections as would have compelled the conclusions contended for by petitioners or forced a contrary result only at the expense of an unnatural and artificial interpretation of the words employed.

It appears to me, however, that in the circumstances of the instant case no such unnatural or artificial interpretation is made necessary, but that in giving to each word and phrase an interpretation which is both natural and warranted, not strained or forced, a conclusion may be reached which is

not only logical, but which carries into effect that which was evidently the intention of Congress.

In my opinion the demurrer must be sustained.