# Commonwealth, Appellant, *v.* Metropolitan Life Insurance Company.

*Taxation — Foreign insurance companies — Gross premiums — Bonuses—Income from annuities—Act of June 1, 1911, P. L. 607— Construction.*

1. Under the Act of June 1, 1911, P. L. 607, imposing a tax on premiums whether received in money, notes, credits or other substitute for money by foreign insurance companies doing business in Pennsylvania, a foreign insurance company is not taxable with respect to dividends and bonuses accruing upon insurance policies and applied by the company with the consent of the insured in part payment of current premiums.

2. Under the said Act of 1911, a foreign insurance company is not taxable with respect to the consideration money received by it for granting annuities.

Argued Jan. 13, 1916.   Appeal, No. 2, May T., 1916, by plaintiff, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1913, No. 90, for defendant, in case of Commonwealth of Pennsylvania v. Metropolitan Life Insurance Company.   Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Appeal from settlement of a tax by the auditor general and state treasurer.

McCARRELL, J., filed the following opinion:

The defendant is a corporation of the State of New York, doing the business of life insurance in Pennsylvania.   It issues ordinary life policies, industrial policies and contracts for payment of annuities.   It has appealed

from two settlements for tax on gross premiums for the years 1911 and 1912. Trial by jury has been duly waived in pursuance of the Act of April 22, 1874, P. L. 109. From the evidence submitted we find the following

### STATEMENT OF FACTS:

The defendant has capital stock of $2,000,000. By its charter the dividends on its capital stock are limited to seven per cent. per annum. The premiums upon the ordinary life policies are payable annually, semi-annually or quarterly, and the premiums upon the industrial policies, which are for smaller sums, are payable weekly. The policies are classified as participating and nonparticipating. In fixing its premium rates the company allows a margin of safety and the premiums named in the policies are generally higher than necessary to carry the risks. This leads to the accumulation of a surplus "arising out of excess or overpayment of premiums by the policyholders in the early years of their policies." The company makes periodical allotments of accumulated surplus to the credit of policyholders, calling the same bonuses when the policies are nonparticipating and dividends when the policies are participating.

In 1911 the company reported gross premiums from business done in the State, being the aggregate amount of premiums fixed in policies, .....................$9,366,846.70

It allotted policyholders in dividends and bonuses, ............................ 743,201.47

And received in money for premiums,....$8,623,645.23

It also received as consideration for its annuity contracts in 1911, .............. 3,865.72

In 1912 the company reported gross premiums from business done in the State, being the aggregate amount of premiums fixed in the policies, ................$9,935,504.82

It allotted policyholders in dividends and
    bonuses, ............................          683,152.54

 

And received in money for premiums, ..... $9,252,352.28

The company has paid the two per cent. tax upon the
money received by it for premiums in 1911 and 1912. It
denies its liability for tax upon the allotment or allow-
ances to policyholders in reduction of their premiums,
and denies also its liability for tax upon the $3,865.75,
as consideration for its annuity contracts. These are
the questions to be determined upon these appeals.

### DISCUSSION.

The taxing statute is the Act of June 1, 1911, P. L.
607, which provides in Section 16, page 616, as follows:
"Every insurance company or association of another
state or foreign government authorized to do business in
this Commonwealth shall make report to the insurance
commissioner on or before March first of each year, under
oath of its president or secretary, showing the entire
amount of premiums of every character and description
received from business transacted in the Commonwealth
during the year or fraction of year ending with the
thirty-first day of December preceding, whether said
premiums were received in money or in the form of notes,
credits or any other substitute for money."

The tax is imposed upon the entire amount of pre-
miums of every character and description "received in
money or in the form of notes, credits or any other sub-
stitute for money." The defendant company contends
that the statute does not impose any tax upon the allow-
ances and allotments to policyholders in reduction of
their premiums. The tax is imposed only upon premi-
ums received in money, notes, credits or other substitute
for money. These allotments and allowances were not
received by the company at all. Because of excess

premiums previously paid by policyholders the company relieved the policyholders from payment to the extent of such excess premiums so paid, with the result that the company did not receive this sum either in money, by note, credit or other substitute for money. These allotments and allowances do not appear to be covered by the language of the taxing statute, which must be strictly construed. We have just considered this subject at length in our opinion filed in the case of Commonwealth v. Penn Mutual Life Insurance Company, 18 Dauphin 206, and refer to the discussion and authorities cited therein in support of the conclusion we shall announce here. In addition to the authorities cited in our opinion just referred to, we may cite the case of Mutual Benefit Life Insurance Company v. Herold, 198 Fed. Repr. 199 (affirmed in 201 Fed. Repr. 918) in which case Judge Cross thus discusses and decides the question raised here:

"It appears that what the company received in cash and all that it so receives where the dividend is applied in abatement of renewal premiums, is the difference between the stipulated premium and the so-called dividend. In such cases the dividends are not sums paid to the policyholders and by him returned in cash. They are not income received. The policyholder has not paid the premium stipulated in his policy, but a premium reduced by his share of a fund as ascertained by the directors composed of excess premiums. This seems to be the view which has been uniformly taken by the courts in so far as their decisions have been brought to my attention."

We are of opinion that the allotments and allowances here deducted from the amount of premiums fixed in the policies are not money received by the company either in cash, by notes or credits, and that the same is not liable to taxation under our statute.

The only remaining question is the liability for tax upon the consideration paid the defendant company for its annuity contracts. A difference is recognized be-

tween the ordinary insurance contract and the granting of an annuity. In Commonwealth v. Provident Bicycle Association, 178 Pa. 636, insurance is thus defined:

"A contract whereby for a consideration one undertakes to compensate another if he shall suffer loss."

In Commonwealth v. Equitable Beneficial Association, 137 Pa. 412, it is stated that:

"The general object or purpose of an insurance company is to afford indemnity or security against loss."

In 2 Amer. & Eng. Ency. of Law & Procedure, page 459, it is stated that:

"An annuity in its strict sense is a yearly payment of a certain sum of money granted to another in fee or for life or for years and chargeable only on the person of the grantor."

In the case of annuity created by contract a certain fixed sum is paid as a consideration for an annual sum to be paid to the grantee of the annuity. The simplest form of insurance is an agreement to pay a lump sum upon the death of the insured, the consideration of which is the payment by the insured of an annual sum, known as the premium.

Insurance as generally understood is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to the annuitant annually during life. The consideration for an insurance contract is generally spoken of as a premium, which is payable annually, semiannually, monthly or weekly. The consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment. The power to make insurance contracts and to grant annuities seems to be recognized as entirely distinct in the Pennsylvania statute providing for incorporation of insurance companies. Our Act of July 9, 1897, P. L. 239 (2 Purdon 1941) provides that, "Any ten or more persons, citizens

of this Commonwealth, may associate . . . . . . and form an incorporation for any of the following purposes, to wit:

"First: To make insurance either upon the stock or mutual principle against fire, &c., &c. ·

"Second: To make insurance either upon the stock or mutual principle upon the lives of individuals, and every insurance appertaining thereto or connected therewith, and to grant and purchase annuities."

The New York statute of March 24, 1868, creating the defendant company, in Section 3, provides as follows, to wit:

"The business of the company shall be to make insurance upon the lives of individuals, and every insurance appertaining thereto or connected therewith and to grant, purchase or dispose of annuities."

It is significant that neither the legislature of Pennsylvania or New York appears to have supposed that the power to make every insurance appertaining to or connected with the lives of individuals, conferred authority also to grant or purchase annuities. This authority is expressly added in the statute of each state.

In People v. Security Life Insurance & Annuity Co., 78 N. Y. 114, the court said:

"There are several annuitants of this company, persons to whom the company for gross sums paid agree to pay certain sums annually during life; and the referee held that these persons were entitled to recover the present value of their annuities computed upon the basis of the Northampton tables, with interest at six per cent. It is claimed on behalf of some of the appellants that in this there was an error. I can perceive none. These are not cases of insurance, and they are not to be governed by any of the rules applicable to life insurance. They are cases simply where for a gross sum paid the company became bound to pay certain sums annually during the life of the annuitants."

For these reasons in our opinion the Act of June 1, 1911, P. L. 607, under which the Commonwealth here

claims, and which imposes tax only upon premiums received by every insurance company, does not impose the tax upon the consideration paid for the granting of annuities. We, therefore, have reached the following

CONCLUSIONS:

1. The defendant company is not liable for tax upon the bonuses and dividends credited upon the premiums named in its policies of insurance, but is liable only for what it actually received in money, notes, credits or other substitute for money.

2. The defendant company under the Act of June 1, 1911, P. L. 607, is not liable to tax upon the consideration money received by it for the granting of its annuities.

3. The defendant company has fully paid the tax imposed by the Act of June 1, 1911, upon the gross premiums received by it during the years 1911 and 1912, and is not now indebted to the Commonwealth in either of the cases stated in the caption hereto.

4. We therefore direct that in Nos. 90 and 91 Commonwealth Docket, 1913, judgments be severally entered in favor of the defendant and against the Commonwealth unless exceptions be filed within the time limited by law.

The defendant company has submitted requests for findings of fact and conclusions of law, which are quite voluminous. We have not specifically answered them, believing that what is stated herein is a sufficient reply to these requests. If, however, specific answers are desired, they will be immediately made upon request therefor.

The court entered judgment for defendant. Plaintiff appealed.

*Errors assigned* were various conclusions of law by the trial judge and the judgment of the court.

*Wm. M. Hargest,* Deputy Attorney General, and *Francis Shunk Brown,* Attorney General, for appellant.

*Arthur G. Dickson,* for appellee.

PER CURIAM, July 1, 1916:

The judgment in this case is affirmed on the opinion of the learned court below in pursuance of which it was entered.