GUARANTY TRUST CO. OF NEW YORK, EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF ROXY M. SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16038. Promulgated April 30, 1929.

*Lee McCanliss, Esq.*, *Theodore Kiendl, Esq.*, and *Otis T. Bradley, Esq.*, for the petitioner.

*Louis S. Pendleton, Esq.*, for the respondent.

OPINION.

Marquette: On the threshold of this proceeding we are confronted with the basic question of whether there is now, as a matter of law, any liability on the part of the decedent's estate for estate tax. The petitioner admits that the Revenue Act of 1918 was in full force and effect at the date of the death of Roxy M. Smith, and that it imposed a tax on the transfer of her net estate, but it contends that the liability so imposed was extinguished when the Revenue Act of 1918 was repealed by the Revenue Act of 1921. In support of this contention the petitioner cites the case of *Wilmington Trust Company* v. *United States*, recently decided by the United States District Court for the District of Delaware and reported in 28 Fed. (2d) 205.

The Revenue Act of 1918 imposed a tax on the transfer of the net estate of every decedent dying after the passage of the Act, and also provided that " the tax shall be due one year after the decedent's death." On November 23, 1921, the Revenue Act of 1921 was approved by the President and superseded the Revenue Act of 1918. The Revenue Act of 1921 contained, among other things:

Sec. 1400. (a) That the following parts of the Revenue Act of 1918 are repealed, to take effect (except as otherwise provided in this Act) on January 1, 1922, subject to the limitations provided in subdivision (b): * * *

TITLE IV (called " Estate Tax ") on the passage of this Act;

* * * * * * *

(b) The parts of the Revenue Act of 1918 which are repealed by this Act shall (unless otherwise specifically provided in this Act) remain in force for the assessment and collection of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect, * * *.

It is clear from the provisions of law quoted that if the tax imposed on the transfer of the net estate of the decedent, Roxy M. Smith, had *accrued* on November 23, 1921, within the meaning of section 1400 (b) of the Revenue Act of 1921, it was not extinguished, but, on the other hand, could be assessed and collected under the parts of the Revenue Act of 1918 which were kept in force for that purpose. The petitioner, however, urges that estate taxes under the Revenue Act of 1918 did not accrue until they became due and payable, that is, one year after the death of the decedent, which in this case would not have been until August 8, 1922. The respondent takes the position that the tax accrued immediately upon the death of the decedent. The question is thus narrowed to whether the tax involved here had accrued on November 23, 1921. If it had not accrued, the

decedent's estate is not subject to any estate tax, regardless of the amount of the net estate. If the tax had accrued, then we must hold the estate liable therefor and proceed to determine the amount of the tax.

It may be conceded here that the case of *Wilmington Trust Co.* v. *United States, supra*, directly supports the position taken by the petitioner, and if sound would be decisive of the question presented. However, we think that the weight of both logic and authority negatives the conclusion reached by the learned court in that case. In the case of *Hertz* v. *Woodman*, 218 U. S. 205, there was presented to the court for decision a question similar in many respects to the one we are now considering. The facts in that case were that a legacy tax was imposed by the Revenue Act of 1898 and was made due and payable one year after death. The testator, Woodman, died March 15, 1902. Effective July 1, 1902, the Revenue Act of 1898 was repealed, but taxes "imposed" prior to July 1, 1902, were saved by the repealing Act. In discussing the contention made by Woodman's executors and legatees that the tax under the Act of 1898 was not "imposed" and was not a liability until it was due and payable, the court said:

No further event could make their title more certain nor their possession and enjoyment more secure. The law, then unrepealed and in full force, operated to fasten, at the moment this right of succession passed by death, a liability for the tax imposed upon the passing of every such inheritance or right of succession. The time for scheduling or listing was practically identical with the time for payment, and the listing or scheduling was required to be done by the executor charged with payment, but might be and was postponed for reasons of grace and of convenience. That is almost universal under any taxing system. The liability attaches at some time. before the time for payment. But the liability for the payment of the tax exacted under section 29 of the act of June 13, 1898, accrued or arose the moment the right of succession by death passed to the defendants in error, and the occurrence of no other fact or event was essential to the imposition of a liability for the statutory tax upon the interest thus acquired.

Much has been urged because the tax was not "due and payable" when the repealing act took effect, and the contention is that because not "due and payable" no tax had been theretofore imposed within the intent of the saving clause. What we have already said answers this. But let us see the very unreasonable result which would ensue if we are required to say that by "tax or duty imposed under section twenty-nine" Congress meant a tax or duty due and payable when the repealing act should go into effect.

No one questions but that one effect of this saving clause would be to save any such tax as was "due and payable" one year before July 1, 1902. This being so, it would be very unjust if the tax in the latter case is saved and the other unremitted, inasmuch as the thing made subject to the tax would in each case be the same, namely, the transmission of a beneficial right to the possession and enjoyment of a legacy or distributive share at the death of a testator or intestate. In the one case the tax paid upon the right passing by death would be preserved. In the other a tax upon a like inheritance would be remitted.

The only difference would be that in one case the time for payment had arrived, while in the other it had not, though in the later case the ultimate obligation to pay was equally as certain and fixed as in the first case.

The case of *Page* v. *Skinner*, decided by the Circuit Court of Appeals for the Eighth Circuit and reported in 298 Fed. 731, is directly in point here. Page died testate September 4, 1918. The Revenue Act of 1916, as amended by the Acts of March 3, 1917, and October 3, 1917, was then in force. It provided that "a tax * * * is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act," and that "the tax shall be due one year after the decedent's death." The Revenue Act of 1918 was approved on February 24, 1919. It contained, among other things, the following:

SEC. 1400. (a) That the following parts of Acts are hereby repealed, subject to the limitations provided in subdivision (b) :
(1) The following titles of the Revenue Act of 1916:
*　　　*　　　*　　　*　　　*　　　*　　　*
Title II (called "Estate Tax"):
*　　　*　　　*　　　*　　　*　　　*　　　*
(2) The following parts of the Act * * * approved March 3, 1917:
Title III (called "Estate Tax") ;
*　　　*　　　*　　　*　　　*　　　*　　　*
(3) The following titles of the Revenue Act of 1917:
*　　　*　　　*　　　*　　　*　　　*　　　*
Title IX (called "War Estate Tax") ;
*　　　*　　　*　　　*　　　*　　　*　　　*
(b) Such parts of Acts shall remain in force for the assesment and collection of all taxes which have accrued thereunder, * * *.

The executrix of Page's estate contended that the tax imposed on the transfer thereof by the Revenue Act of 1916 as amended, had not accrued at the effective date of the Revenue Act of 1918, and that it was not saved by section 1400 (b) of the latter Act. The court, in rejecting the contention of the executrix, said:

The imposition took effect at the time of death and the tax became at once a lien on the property of the estate, enforceable by sale, if not paid on proceedings in court.

In *Flannery* v. *Willcuts*, 25 Fed. (2d) 951, which was also decided by the Circuit Court of Appeals for the Eighth Circuit, it was held that estate taxes under the Revenue Act of 1918 accrued at the death of the decedent and that such taxes were saved by the Revenue Act of 1921, although they had not become due and payable when the latter Act became effective.

In *Ernest M. Bull, Executor*, 7 B. T. A. 993, the question was when estate taxes imposed by the Revenue Act of 1918 were deductible from the gross income of an estate, the books of which were kept on the accrual basis. Archibald H. Bull died February 13, 1920,

leaving an estate subject to the estate-tax provisions of the Revenue Act of 1918. His executors immediately placed the accounts of the estate upon the accrual basis. In computing the net income of the estate for the period February 13, 1920, to December 31, 1920, the executors deducted the amount of the estate tax due although it was not paid until 1921. The Commissioner disallowed the deduction and the executors appealed to this Board. In sustaining the petitioner's right to the deduction taken, we said, after quoting from *Hertz* v. *Woodman, supra*:

Under the Revenue Act of 1918 the same situation might arise, in respect of an estate tax upon the estate of a decedent dying within one year prior to the repeal of Title IV on November 23, 1921, by section 1400 of the Revenue Act of 1921. Subsection (b) saved from repeal the assessment and collection "of all taxes which have accrued under the Revenue Act of 1918 at the time such parts cease to be in effect." Whatever may be said of the use of the word "imposed" in the repealing Act of 1902 and the word "accrued" in 1400 (b), Revenue Act of 1921, it seems clear that the logic of the decision in *Hertz* v. *Woodman, supra*, is essentially applicable to a situation arising under the latter provision. The fact that the 1898 Act imposed a legacy tax and the 1918 Act imposed an estate tax is unimportant, *Knowlton* v. *Moore*, 178 U. S. 41; 3 Am. Fed. Tax. Rep. 2684; *New York Trust Co.* v. *Eisner*, 256 U. S. 345; 3 Am. Fed. Tax Rep. 3110 The 1918 Act is similar to the earlier Act in that the one year for collection was provided in a separate section (sec. 406) from that of imposition (sec. 401), and hence may likewise be regarded as adjective rather than substantive. The *Hertz* case has been followed in *Cochran* v. *United States*, 254 U. S. 387; 3 Am. Fed. Tax Rep. 3092, and in many decisions of lower Federal courts, and in view of the removal of any doubt which may have been suggested by the *obiter dictum of United States* v. *Woodward, supra* (see *Catherwood* v. *United States, supra*) it remains authority for the view that death duties are imposed at death, become a liability and accrue at that time, and survive a subsequent repeal of the taxing statute, notwithstanding that they become payable thereafter.

We are of opinion that the tax imposed by the Revenue Act of 1918 upon the transfer of the net estate of the decedent, Roxy M. Smith, accrued at the date of her death within the meaning of section 1400 (b) of the Revenue Act of 1921, and that it was saved by that section.

Having decided the first issue adversely to the petitioner, we come now to determine whether the respondent, in computing the gross estate of Roxy M. Smith, erred in including therein the commuted, or cash surrender value at the date of her death, of the three so-called refund annuity contracts. The petitioner strenuously urges that the commuted value of the contracts represented insurance on the life of Roxy M. Smith, payable to her son William E. Smith, and that the Revenue Act of 1918, in so far as it purports to authorize the inclusion of any part thereof in the gross estate subject to the estate tax, is unconstitutional and void. It is the contention of the respondent that the commuted value of the contracts was not receivable by William E. Smith as insurance taken out by the decedent on her

own life, but that it represented the value of a transfer from the decedent which took effect at or after her death, and should be included in her gross estate under section 402 (c) of the Revenue Act of 1918. The petitioner, to lend weight to its contention, introduced as a witness the actuary of the Equitable Life Assurance Society, who testified as follows:

Now this guarantee feature is in the form of decreasing term insurance where the amount of insurance involved from the date of issue up until the first quarterly payment had been made, would consist of the whole consideration. In the case of death during the second period of three months after receiving one payment but prior to the date upon which the second payment had become due, the insurance would consist of an amount equal to the consideration, less the payment made, and that process of coverage would continue to decrease until it became zero, after which there would be no insurance feature to the contract. So that the guaranteed portion or refund feature is in the nature of an apparent decreasing term insurance, with definitely fixed amounts falling in at definite periods.

While the practical effect, in so far as William E. Smith is concerned, is the same whether he received the commuted value of the contracts as insurance on his mother's life, or as a transfer from her at or after her death, we are unable to agree with the interpretation placed upon the contracts by the witness whose testimony we have just quoted. Nor do the courts agree with him. In *People* v. *Security Life Insurance & Annuity Co.*, 78 N. Y. 114; 34 Am. Rep. 522, the court, discussing annuity contracts, said:

There are several annuitants of this company—persons to whom the company for gross sums paid agree to pay certain sums annually during life; and the referee held that these persons were entitled to receive the present value of their annuities computed upon the basis of the Northampton tables with interest at 6%. It is claimed on behalf of some of the appellants that in this there was error. I can perceive none. These are not cases of insurance and they are not to be governed by any of the rules applicable to life insurance. They are cases where the company became bound to pay certain sums annually during the life of the annuitants. It has been the uniform rule of the courts in this state to use those tables to ascertain the present value and to capitalize such annual payments.

In the case of *Commonwealth* v. *Metropolitan Insurance Co.*, 254 Pa. 510; 98 Atl. 1072, the question arose whether considerations paid to an insurance company for the granting of annuities constituted premiums within the meaning of the statute imposing a tax on "premiums" of every description received by insurance companies. In holding that such payments did not constitute premiums, the court said:

In the case of an annuity created by contract, a certain fixed sum is paid as a consideration for an annual sum to be paid to the grantee of an annuity. The simplest form of insurance is an agreement to pay a lump sum upon the death of the insured, the consideration of which is the payment by the insured of an annual sum known as the premium.

Insurance, as generally understood, is an agreement to indemnify against loss in case property is damaged or destroyed by fire, or to pay a specified sum upon the death of the insured or upon his reaching a certain age. An annuity is generally understood as an agreement to pay a specified sum to an annuitant annually during life. The consideration for an insurance contract is generally spoken of as a premium, which is payable annually, semi-annually, monthly or weekly. The consideration for an annuity contract is not generally regarded as a premium and is usually covered by a single payment.

To the same effect is the case of *People ex rel. Metropolitan Life Insurance Co.* v. *Knapp*, 184 N. Y. S. 345; affd. 132 N. E. 916, which involved a statute imposing an annual franchise tax on insurance companies measured by the gross amount of premiums received during the preceding calendar year. The court, holding that money received by the insurance company from sales of annuities did not constitute premiums within the meaning of the Act, said:

Webster defines " premium " as " the consideration paid, whether in money or otherwise, for a contract of insurance." He defines " insurance " as " a contract whereby, for a stipulated consideration, called a premium, one party undertakes to indemnify or guarantee another against loss by a certain specified contingency or peril." The Century Dictionary defines " premium " as " the amount paid or agreed to be paid in one sum or periodically to insurers as the consideration for a contract of insurance." It defines " insurance " as " a contract by which one party, for an agreed consideration (which is proportioned to the risk involved), undertakes to compensate the other for loss on a specified thing, from specified causes." Bouvier defines " premium " as " the consideration for a contract of insurance." 3 Bouvier, L. Dict. It is quite evident that within these definitions a contract for an annuity is not a contract for insurance, and that the price paid for annuities is not a premium paid for an insurance policy.

The legislature has itself distinguished between insurance policies and annuity bonds, for in section 70 of the Insurance Law (Consol. Laws, c. 28) it has authorized 13 or more persons to become a corporation to write insurance " upon the lives or the health of persons and every insurance appertaining thereto, and to grant, purchase or dispose of annuities." Moreover, the Court of Appeals in this state in *People* v. *Security Life Ins. & Annuity Co.*, 78 N. Y. 114, 34 Am. Rep. 522, has said of annuity bonds:

" These are not cases of insurance, and they are not to be governed by any of the rules applicable to life insurance. They are cases simply where for a gross sum paid the company became bound to pay certain sums annually during the life of the annuitants."

In a case in Pennsylvania it has been definitely held that sums of money paid for annuities are not to be regarded as included within the words " premiums of every character " which by statute were made the measure of franchise taxes laid upon foreign insurance corporations doing business in that state. See *Commonwealth* v. *Metropolitan Life Ins. Co.*, 254 Pa. 510, 516, 98 Atl. 1072, Laws Pa. 1911, pg. 616, section 16; 5 Purdon's Digest (13th Ed) p. 6461, sec. 359.

We are of opinion, and so hold, that the refund annuity contracts that we are here considering were not contracts of insurance and

that no part of the money or value received by William E. Smith under these contracts represented the proceeds of insurance taken out by the decedent on her own life.

Since the several refund contracts were not contracts of insurance, we must next inquire whether they represented transfers to William E. Smith of their present worth, commuted, or cash surrender value, effective on or after the death of Roxy M. Smith. The facts show that the decedent paid out of her then estate $1,000,000 for the refund annuity contracts in question. By their terms she was to receive an annuity during her lifetime, but if the amounts paid to her were not equal to the amount paid by her to the company, the company was to continue the annual payments to her designated beneficiary until at least the principal amount had been repaid. The contracts had at all times a cash surrender or commuted value, and the decedent could have canceled them at any time and received the amount thereof, and she could have changed the beneficiary and made it payable to whom she pleased. Except for actual custody, the cash surrender value was for all practical purposes hers at all times. The situation would have been little different if she had created a revocable trust, reserving to herself a fixed annuity payable out of income or principal as might be necessary, the remainder, if any, going to her son. Under such circumstances it would be held that the transfer to her son was not complete until her death, and it would be taxable as part of her gross estate. *Reinecke* v. *Northern Trust Co., Executor*, 278 U. S. 339.

It also may be pointed out that the right reserved by Roxy M. Smith to surrender the annuity contracts or to change the beneficiary had at any date a value equal to the cash surrender value at that date. That right was extinguished only by her death and until that time the power to have the cash surrender value returned into her own hands or otherwise to dispose of it as she saw fit, was wholly hers. In this connection the language of the Supreme Court of the United States in *Chase National Bank* v. *United States*, 278 U. S. 327, is enlightening. The court said:

It is true, as emphasized by plaintiffs, that the interest of the beneficiaries in the insurance policies effected by decedent "vested" in them before his death and that the proceeds of the policies came to the beneficiaries not directly from the decedent but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination of [by] death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the

termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

A power in the decedent to surrender and cancel the policies, to pledge them as security for loans, and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors (*Cohen* v. *Samuels*, 245 U. S. 50; see *Burlingham* v. *Crouse*, 228 U. S. 459), and which may, under local law applicable to the parties here, subject them in part to the payment of his debts (N. Y. Domestic Relations Law, chapter 14, Consol. Laws, sec. 52; *Kittel* v. *Domeyer*, 175 N. Y. 205; *Guardian Trust Co.* v. *Straus*, 139 App. Div. 884, aff'd 201 N. Y. 546), is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death.

\* \* \* \* \* \* \*

The plaintiff points to no requirement, constitutional or statutory, that the termination of the power of disposition of property by death whereby the transfer of property is completed, which we have said is here the subject of the tax, must be preceded by a transfer directly from the decedent to the recipient of his bounty, of the property subject to the power. And we see no necessity to debate the question whether the policies themselves were so transferred, for we think the power to tax the privilege of transfer at death can not be controlled by the mere choice of the formalities which may attend the donor's bestowal of benefits on another at death, or of the particular methods by which his purpose is effected, so long as he retains control over those benefits with power to direct their future enjoyment until his death. Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax. (*Chanler* v. *Kelsey*, 205 U. S. 466.) " To make a distinction between a general power and a limitation in fee is to grasp at a shadow while the substance escapes." Sugden, Powers (8th Ed), 396; sec. Gray, Perpetuities (3d Ed., 1915), sec. 526 (b).) And the non-exercise of the power may be as much a disposition of property testimentary in nature as would be its exercise at death. (*Bullen* v. *Wisconsin*, 240 U. S. 625; cf. *United States* v. *Robbins*, 269 U. S. 315, 327 [T. D. 3817, C. B. V–1, 188]; *Cohen* v. *Samuels, supra.*)

\* \* \* \* \* \* \*

It is our opinion that in the instant case there was a transfer of property from Roxy M. Smith to her son, William E. Smith, which took effect in possession or enjoyment at or after the death of Roxy M. Smith, and that the respondent properly included the value of the property in her gross estate.

The tax will be computed on the basis of this decision and the stipulation entered into by the parties hereto.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*