OLD COLONY TRUST COMPANY AND EVERETT MORSS, JR., EXECUTORS OF THE WILL OF EVERETT MORSS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82769.  Promulgated March 2, 1938.

*W. S. Felton, Esq.,* for the petitioners.
*H. F. Noneman, Esq.,* for the respondent.

OPINION.

HARRON: The question involved in this proceeding is whether $40,000 received by beneficiaries of the decedent is taxable as an asset of the estate or whether it is properly excluded from the value of the gross estate as insurance received by beneficiaries under policies taken out by the decedent upon his own life being not in excess of $40,000 so as to be within the exemption allowed by section 302 (g) of the Revenue Act of 1926.

Section 302 (g) of the Revenue Act of 1926 provides as follows:

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— ·

\*   \*   \*   \*   \*   \*   \*

(g) \* \* \* and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

In order to properly determine the principal question involved, it is necessary to consider a collateral question, namely, whether the agreement entered into between the decedent and the Sun Life Assurance Co. of Canada on August 27, 1928, was a contract of life

insurance so that the $40,000 paid to decedent's survivors by that company was received by them "as insurance under policies taken out by the decedent upon his own life." Petitioners contend that the agreement was in part a contract of life insurance and argue that a contract which provides for the payment of a certain sum of money upon death is, in that respect, a contract of life insurance although the contract contains other provisions having nothing to do with life insurance. They contend that the type of agreement involved in this proceeding was commonly written at the time by numerous insurance companies, the consideration paid for the issue of such contract being customarily apportioned by an actuarial allocation.

The respondent contends that the agreement was not a contract of life insurance so that the proceeds, $40,000, paid to the decedent's survivors were not insurance proceeds and therefore that the entire amount thereof is properly included in the decedent's gross estate. Respondent contends, in substance, that the contract was in fact an annuity contract although he points out that it is difficult to find a single term which accurately describes the contract. He suggests that the contract has some of the characteristics of a trust.

We are of the opinion that the contract made by the decedent was not a contract of life insurance. This seems evident from reading the contract. Further, there is no evidence that decedent applied for life insurance or submitted to the usual physical examination. The company appears to have been unconcerned with the element of life expectancy or physical condition, even though decedent was 63 years of age at the time he made the contract. The single payment in the amount of $42,000 does not appear to have been a "premium" for life insurance. It was not consideration given for an agreement to indemnify against the loss of life nor does the amount of the payment appear to have been proportioned to any life insurance risk. Cf. *People, ex rel. Metropolitan Life Insurance Co.* v. *Knapp*, 184 N. Y. S. 345; affd., 132 N. E. 916; *Commonwealth* v. *Metropolitan Insurance Co.*, 254 Pa. 510; 98 Atl. 1072; *Ritter* v. *New York Mutual Life Insurance Co.*, 169 U. S. 139.

Decedent paid a single sum of $42,000 to the company. The company agreed to several matters: To pay "the annuitant" the amount of $1,400, annually, for life, to be increased by such dividends as may be allotted by the company out of its surplus interest earnings; to pay to the annuitant or his assigns the principal sum of the contract, $40,000, *at any time* upon surrender of the contract; to pay to the beneficiaries of the annuitant at least the principal sum of $40,000 upon proof of death of the annuitant or a sum equal to the premium paid, $42,000, less the sum of all annuity payments made

under the policy. It is noted that the amount of the annuity agreed to be paid, $1,400, is 3⅓ percent of the amount paid, $42,000. Thus it appears that the company guaranteed to the annuitant a return of 3⅓ percent on the total amount paid to the company and a return of at least the principal amount of $40,000 either to the annuitant or his assigns during his life, on surrender of the "policy", or to his beneficiaries upon his death. It further appears that the death of the annuitant operated to terminate the contract rather than cause an insurer's obligation to become payable. The company had an obligation at all times to pay the principal sum set forth in the contract conditioned only on the surrender thereof. Death of the annuitant was not the sole contingency for payment of the principal sum. The contract was described on its face as a "Life Annuity With Principal Sum Payable at Death."

An annuity contract is defined as an "agreement to pay a specified sum to the annuitant annually during life" in consideration of a single payment, which is not a "premium." 3 Corpus Juris Secundum 1375; *Commonwealth* v. *Metropolitan Life Insurance Co.*, *supra;* *Carroll* v. *Equitable Life Assurance Society of United States*, 9 Fed. Supp. 223; *Rishel* v. *Pacific Mutual Life Insurance Co.*, 78 Fed. (2d) 881. We believe the contract under consideration is an annuity contract within the definition set forth above. The term "annuitant" is used throughout. Neither the terms "life insurance" or "insurance" or "insured" appear anywhere in the contract.

Counsel for petitioners argues that the contract was *in part* a contract of insurance. He would have us consider how reserves against the principal sum were set up. This factor appears to be immaterial because the method of handling reserves would not be wholly determinative of the question whether the contract was an insurance contract. It is true that the company set up reserves against the liability it assumed. It undertook some risk when it guaranteed payments of annuity and repayment of at least the principal sum of $40,000. But we think this was purely an investment risk related only to management in investing the fund. There is no evidence from examination of the contract that the company assumed any of the risks of life insurance. As stated before, the agreement to pay the principal sum of $40,000 was not contingent upon death but only upon demand and surrender of the contract. We do not believe that the provision made in the contract to pay the principal sum to the annuitant's beneficiaries upon his death, in the event he did not make any demand for payment during his life to himself or his assignees, injected any aspect of life insurance into the contract. The provision was no more than one for disposition of a fund reserved to the annuitant under a contract that guaranteed payment of a principal sum, the consideration for which was the payment of a single sum. Cf. *Guaranty Trust*

*Co. of New York, Executor*, 16 B. T. A. 314; *Ballou* v. *Fisher*, 61 Pac. (2d) 423. The decedent paid $42,000 to the company. Of this amount at least $40,000 and so much more of the amount paid as was not received in annuity payments "remained virtually at his disposal, use and control as long as he lived and passed at his death to the beneficiaries he named." Cf. *In re Thornton's Estate*, 243 N. W. 389, 391. Such contracts are not insurance policies. *In re Thornton's Estate, supra.*

The petitioners deny tax liability upon the amount of $40,000 paid pursuant to the contract under consideration upon the assertion that section 302 (g), Revenue Act of 1926, exempts the receipt of that payment from taxation. The exemption referred to is one of legislative grace and the wording of the statute must be carefully considered. Congress has used clear terms in describing the nature of the asset it relieves from estate taxation and has stated it to be $40,000 "of the amount receivable by * * * beneficiaries *as insurance under policies taken out by the decedent upon his own life.*" (Italics supplied.) The decedent, in this proceeding, did not take out a policy of insurance on his own life when he executed the annuity contract here involved. Therefore the payment of $40,000 thereunder to the beneficiaries he designated was not, in our opinion, received by them *as insurance.* We therefore hold that respondent is correct in including the amount of $40,000 in the gross estate.

The petitioners are entitled to credits for amounts paid for estate, inheritance, or succession taxes to any state upon proof of payment. In computing the correct tax liability under Rule 50 consideration should be given to allowable credits under section 301 (b).

*Decision will be entered under Rule 50.*