JOHN M. BRAVO, demandante y apelante, *v.* TESORERO DE PUERTO RICO, demandado y apelado.

Número 10915.

*Sometido:* 4 de noviembre de 1953. *Resuelto:* 3 de marzo de 1954.

*J. J. Ortiz Alibrán,* abogado del apelante; *José Trías Monge,*
*Secretario de Justicia, y José A. García Malpica, Procurador*
*Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión
del tribunal.

La Mayagüez Sugar Company era propietaria de una
finca que dividió en varias partes vendiéndolas a distintas
personas. Uno de sus compradores fué John M. Bravo quien,
desde el año 1944, en que la compró hasta el presente, ha
venido utilizando dicha finca en la siembra de caña. En su
negocio de siembra y molienda de caña, Bravo utiliza el sis-
tema de contabilidad conocido como incurrido y devengado
(*accrual basis*).

En el año de 1945 Bravo rindió su planilla de contribu-
ción sobre ingresos demostrando que había sufrido pérdidas
durante dicho año económico. Entre los ingresos de dicho
año informados por él figura la cantidad de $21,838.22 por
concepto del subsidio ofrecido por el Gobierno Federal me-
diante las disposiciones de la Ley Azucarera, a pesar de que no
fué hasta el 7 de febrero de 1946 que Bravo solicitó el pago de
dicho subsidio, el cual se efectuó en marzo 29 de 1946. Las
razones que tuvo Bravo para justificar esta dilación fueron,
según él mismo explica, que la Administración de Producción
y Mercadeo realizó una investigación para determinar la vali-
dez de la división de la finca vendida por la Mayagüez Sugar
Company. Esta investigación se debió a que la Ley Azuca-
rera paga mayores subsidios a los pequeños colonos, por lo
cual dicha agencia federal quería cerciorarse de que no había
motivos ilegales en dicha transacción. Además la Adminis-
tración de Producción y Mercadeo exigió que se aclarara la
extensión de la parte de la finca comprada por Bravo debido
a un alegado exceso de cabida.

Rendida su planilla para el año 1946 el Secretario de Hacienda procedió a trasladar la suma de $21,959.87 [1] de la planilla del año de 1945 a la de 1946 toda vez que, a su juicio, habiendo sido reclamada y pagada dicha cantidad en el año 1946 no procedía se informara como ingreso del año 1945. Como resultado de esta actuación del Secretario de Hacienda se notificó a Bravo una deficiencia contributiva de $7,420.41 para el año 1946 a la vez que se le reconocía una pérdida neta de $10,826.61 para el año 1945. El contribuyente, no conforme con estas actuaciones del Secretario de Hacienda y previo los trámites de ley, entabló recurso ante el extinto Tribunal de Contribuciones. El 12 de agosto de 1952 el Tribunal Superior de Puerto Rico, Sala de San Juan, resolvió el caso declarando sin lugar la demanda interpuesta por Bravo, contra cuya sentencia ha promovido la presente apelación, señalando la comisión de los siguientes errores:

"1. Al declarar sin lugar la demanda;

"2. Al considerar que el demandante no estaba obligado a declarar en el año 1945 la compensación federal conforme a la Ley Azucarera de 1937 correspondiente a la cosecha de ese mismo año;

"3. Al considerar, no obstante haber cumplido el demandante con todos los requisitos exigidos por ley, el 31 de diciembre de 1945, la partida de $21,959.87 como sujeta a contingencias, y, por lo tanto, no acumulable en 1945 en un sistema de contabilidad sobre la base de 'accrual';

"4. Al considerar que el hecho de no haberse cursado una solicitud de pago, o no haber sido éste autorizado por el Secretario de Agricultura de los Estados Unidos, era motivo para que el contribuyente estuviera impedido de no declarar su ingreso en el año a que correspondía;

"5. Al considerar la solicitud y la autorización como indispensables, no obstante reconocer que es una cuestión puramente técnica resuelta ya por la jurisprudencia en contra del criterio del Tribunal."

---

[1] La diferencia entre los $21,838.28 informados por Bravo y los $21,959.87 pagádosle más tarde corresponde a una cooperativa de colonos formada por Bravo y dos hermanos de éste.

El problema con que nos enfrentamos es el de determinar *cuándo* debe incluirse como ingreso bruto la partida en controversia. Pearce, *Income Tax Fundamentals*, pág. 156.

■ No hay controversia en cuanto a que el sistema de contabilidad usado por el contribuyente es el conocido como incurrido y devengado (*accrual basis.*) (²) La sección 14 (*b*) de nuestra Ley de Contribuciones sobre Ingresos, Ley núm. 74 de 6 de agosto de 1925, Leyes de ese año, pág. 401, autoriza al contribuyente a utilizar regularmente cualquier sistema de contabilidad siempre que el mismo refleje claramente su ingreso. (³)

---

(²) Cuando el ingreso se toma en consideración tan pronto es ganado (*earned*), háyase o no recibido, y los gastos son considerados tan pronto se incurre en ellos, háyanse o no pagados, se dice que el sistema de contabilidad es uno de incurrido y devengado (*accrual basis.*) *Clarence Shock*, 1 B.T.A.. 528; *Owen-Ames-Kimball Co.*, 5 B.T.A. 921.

(³) Dicha sección lee así:

"(*b*) El ingreso neto será computado sobre la base del período anual de contabilidad del contribuyente (año económico o año natural según sea el caso) de acuerdo con el sistema de contabilidad usado regularmente por el contribuyente en sus libros; pero si él no llevare libros de contabilidad, o si el sistema usado no refleja claramente su ingreso, la computación será hecha de acuerdo con el sistema que en opinión del Tesorero refleje claramente el ingreso. Si el período anual de contabilidad del contribuyente es otro que el de año económico según se define en la sección 3, o si el contribuyente no siguiera un período anual de contabilidad o no llevare libros, el ingreso neto será computado a base del año natural."

La sección 3 (*d*) dispone:

"Los términos 'pagado o incurrido' y 'pagado o devengado' serán interpretados de acuerdo con el método de contabilidad sobre cuya base se computa el ingreso neto de acuerdo con las secciones 14 ó 30. Las deducciones y créditos que este título dispone se tomarán por el año contributivo en que fueren pagados o devengados, o pagados o incurridos, dependiendo ello del método de contabilidad a base del cual se compute el ingreso neto de acuerdo con las secciones 14 ó 30; a menos que, para evidenciar claramente el ingreso, tales deducciones o créditos deben tomarse como pertenecientes a un período diferente."

La sección 15 (*a*) en lo pertinente dispone:

"El montante de todos dichos ingresos será incluído en el ingreso bruto por el año contributivo en que sean recibidos por el contribuyente, a menos que, bajo los sistemas de contabilidad permitidos por la subdivisión (*b*) de la sección 14, cualquiera de dichas cantidades deban ser consideradas como de un período distinto."

■ La contención del Secretario de Hacienda es al efecto de que el contribuyente no podía considerar como devengado (*accrued*) en 1945 el subsidio que él recibiera más tarde en el 1946. Su posición es al efecto de que hasta tanto se haga la solicitud de pago y el Secretario de Agricultura, después de determinar si se han cumplido los requisitos de ley, lo apruebe, el contribuyente no puede considerar dicho subsidio como devengado pues hasta que ocurra dicha aprobación, alega, el pago es incierto. Sostiene que el pago del subsidio está sujeto a la contingencia de que el Secretario de Agricultura apruebe la solicitud.

Convenimos con el apelado en cuanto a que una partida cuyo cobro está sujeto a una contingencia no puede considerarse como devengada (*accrued*). 2 Mertens, *Law of Federal Income Taxation*, sección 12.62, pág. 216; *Comm. Int. Revenue* v. *Southeastern Express Co.*, 56 F.2d 600; *Helvering* v. *Russian Finance & Construction Corporation*, 77 F.2d 324; *Jamaica Water Supply Co.*, 42 B.T.A. 359, confirmado en *Jamaica Water Supply Co.* v. *Commissioner of Internal Revenue*, 125 F.2d 512; Holland, *Accrual Problems in Tax Accounting*, 48 Mich. L. R. 149, 159 (1949.) Ese principio ha surgido de un *dictum* pronunciado por el Tribunal Supremo de los Estados Unidos, (⁴) al efecto de que antes de que pueda considerarse como devengada una obligación, es necesario que exista una responsabilidad definida. Otros tribunales haciendo uso de ese lenguaje establecieron la regla de que una obligación no es suficientemente definida para considerarse devengada hasta que hayan ocurrido todos los eventos que fijan la cantidad y determinan la responsabilidad. Véase el ya citado artículo de Holland a la pág. 153 y los casos por él citados al escolio 7.

■ La cuestión ante nos consiste, pues, en determinar cuándo podía el contribuyente Bravo considerar como ingreso el subsidio que concede la Ley Azucarera, aunque el deter-

---

(⁴) *United States* v. *Anderson*, 269 U. S. 422, 440, 441.

minar cuándo una partida constituye ingreso sea una "cuestión perpleja." 2 Mertens, ob cit., a la pág. 125.([5]) Para ello es necesario considerar (1) en qué consiste el sistema de contabilidad de incurrido y devengado (*accrual basis*), también llamado "de acumulación"; y (2) hasta qué punto estaba el pago del subsidio sujeto a una contingencia. Como dijimos antes, supra, escolio 1, bajo dicho sistema el ingreso se considera como tal tan pronto es ganado (*earned*) aunque no haya sido pagado, o sea, las entradas se asignan o colocan en el período de contabilidad en que han sido ganadas independientemente del tiempo en que sean recibidas. 2 Mertens, ob. cit., sección 12.01, pág. 121; Magill, *When is Income Realized*, 46 Harv. L. R. 933, 940. La idea básica de dicho sistema de acumulación—según se dijo en *H. H. Brown*, 8 B.T.A. 112, 117—es la de que los libros de contabilidad reflejen inmediatamente las obligaciones y gastos en que definitivamente se ha incurrido así como el ingreso definitivamente ganado, sin tomar en consideración el hecho de si el pago ha sido hecho o si aún se debe.

■ Según Mertens, Vol. 2 de su obra citada, sección 12.60, pág. 210, el sistema de acumulación exige (1) la existencia de una obligación válida de parte del deudor, (2) la fijación o determinación razonable de la cantidad objeto de la obligación y (3) el elemento de recaudación (*collectibility*) que está comprendido entre los requisitos del número (2). En el curso de esta opinión examinaremos, de ser necesario, la existencia o ausencia de estos tres elementos en el caso ante nos.

■ En cuanto al primer requisito es necesario que (a) exista la obligación y (b) que la misma no esté sujeta a una contingencia genuina.

---

([5]) El problema no es de fácil solución debido a que no hay una definición precisa de lo que significa la palabra "devengado" (*accrued*) por lo que dicha palabra está llena de confusión. *Ernest M. Bull*, 7 B.T.A. 993. La determinación de cuándo un ingreso puede considerarse devengado (*accrued*), envuelve mayormente una cuestión de hecho a ser decidida en cada caso. 2 Mertens, ob. cit., pág. 211.

(a) *Existencia de una Obligación Válida.*

No existen dudas en cuanto a la existencia de la obligación. El subsidio que ofrece el gobierno federal bajo la Ley Azucarera no es una mera donación sino que es una compensación que se paga en consideración a los gastos incurridos por los productores basados en la fe que tienen en la promesa que les hizo el gobierno de pagar el subsidio. *Allen* v. *Smith,* 173 U. S. 389, 400. El objetivo principal de la Ley Azucarera de 1948, similar en sus aspectos más importantes a la de 1937, es "la estabilización de las industrias de producción, refinación e importación de azúcar." U. S. Code, Congressional Service, 1947, pág. 1686. Véase, también, *Chandler Laboratories* v. *Smith*, 88 F. Supp. 583, 585. Una vez que el productor cumple con los términos del estatuto, su derecho al subsidio se convierte en un derecho adquirido. *Burdon Sugar Refining Co.* v. *Payne,* 167 U. S. 127, 148; *Calder* v. *Henderson,* 54 Fed. 802, 806. La existencia de la obligación y su validez, es pues, clara. El apelado no ha disputado este hecho.

██ (b) *La Obligación No Debe Estar Sujeta a Una Contingencia Substancial.*

De acuerdo con la Ley Azucarera de 1937 ([6]) se concedía

---

([6]) Ley de septiembre 1 de 1937, 50 Stat. 903, 7 U.S.C.A., Sec. 1110, *et seq.* Las secciones pertinentes de dicho estatuto, disponen, en cuanto al problema aquí envuelto, lo siguiente:

"Subcapítulo III—*Disposiciones Sobre el Pago Condicional*

"Sección 1131.—Condiciones en cuanto a producción

"El Secretario queda autorizado a efectuar pagos bajo las siguientes condiciones, con respecto a azúcar o azúcar derretida (*liquid sugar*) obtenida comercialmente de remolacha o caña de azúcar cultivada en una finca para la extracción de azúcar o azúcar derretida:

"Empleo de menores

"(a) Que a ningún niño menor de catorce años se le haya empleado o se le haya permitido trabajar en la finca, ya sea para beneficio propio de dicho menor o de cualquiera otra persona, en la producción, cultivo o recolección de una cosecha de remolacha o de caña de azúcar con respecto a la cual se haga una solicitud de pago, excepto si se tratase de un miembro de la familia inmediata de una persona que fuera dueña legalmente de no menos de un 40 por ciento de la cosecha al momento en que se realizó tal trabajo; y que a ningún niño entre las edades de catorce y deciseis años se le haya empleado o se le haya permitido hacer tales labores, ya sea para beneficio propio de dicho menor o de cualquiera otra persona, por un período

al agricultor de caña una compensación cuyo monto se determinaba a base de los quintales de azúcar comercial producidos por las cañas molidas por dicho agricultor. El Secretario de Agricultura estaba facultado para autorizar pagos de subsidio, con relación al cual se hubiera formalizado por el agricultor una solicitud de pago, siempre que, previa determinación de dicho funcionario, el agricultor hubiera cumplido con determinadas condiciones, que el propio estatuto enumera, entre ellas la de no emplear menores de 14 años, el pago de un salario mínimo, el cumplimiento con determinada jornada mínima de trabajo, etc.

Al terminar la zafra de 1945, como cuestión de hecho, Bravo había cumplido todas las condiciones exigidas por el estatuto. Sin embargo, no formalizó su solicitud para el pago del subsidio correspondiente a dicha zafra, hasta el 7 de febrero de 1946. Finalmente dicho subsidio le fué pagado en 29 de marzo del mismo año 1946. Conforme al sistema de

mayor de ocho horas en cualquier día, excepto si se tratase de un miembro de la familia inmediata de una persona que fuera dueña legalmente de no menos de un 40 por ciento de la cosecha al momento en que se realizó tal trabajo. El Secretario queda autorizado a efectuar pagos, no obstante la omisión de cumplirse con las condiciones provistas en esta subdivisión, pero los pagos efectuados con respecto a cualquier cosecha estarán sujetos a una deducción de $10 por cada niño por cada día, o porción de día, durante el cual dicho niño estuvo empleado o se le permitió que trabajara en contra de las disposiciones que preceden de esta subdivisión.

"Producción de cuota proporcional
"(b) . . . . . . . . . . . . . . . .
"Niveles de salarios, pago del productor por el fabricante
"(c) (1) Que todas las personas empleadas en una finca en la producción, cultivo o recolección de remolacha o de caña de azúcar con respecto a la cual se haga una solicitud de pago hayan recibido su pago completo por todas sus labores, y le hayan sido pagados salarios por ello a tipos no menores que aquellos que puedan ser determinados por el Secretario como justos y razonables después de una investigación y la debida notificación y oportunidad de audiencia pública; y al hacer tales determinaciones el secretario tomará en consideración las normas al efecto establecidas por él previamente bajo las secciones 601–608; 608a–608c, 608d; 612, 613–619, 620, 623 y 624 de este título, y la diversidad de condiciones entre las distintas áreas de producción; *Disponiéndose, sin embargo*, que podrá efectuarse un pago que sería pagadero, a no ser por las disposiciones que preceden de este subpárrafo, según el Secretario lo determine, en tal forma que el obrero recibirá una cantidad, en tanto en cuanto dicho pago sea

contabilidad que utilizaba este agricultor—incurrido y devengado (*accrual basis*)—informó el ingreso de dicho subsidio como devengado en el año 1945.

En la vista ante este Tribunal, las partes convinieron en que la cuestión a resolver era si el derecho a la compensación o subsidio surge cuando el agricultor cumple con las condiciones o requisitos de ley o si surge cuando el Secretario de Agricultura Federal determina que se han cumplido esas condiciones o requisitos. Si nos decidimos por lo primero, entonces estaríamos resolviendo, que tan pronto como el agricultor estima que ha cumplido las condiciones de ley antes mencionadas, su derecho a recibir el pago a la compensación o subsidio, no está sujeto a la contingencia de que ocurra algún suceso futuro que haga incierto dicho pago. Rechazamos tal proposición. El derecho del agricultor o productor de azúcar a la compensación depende de que éste cumpla a satisfacción del Secretario de Agricultura todas las condiciones

suficiente, igual a la cantidad de los salarios devengados y no pagados por tales labores, y que el productor recibirá el remanente, si alguno hubiere, de dicho pago.

"(2) Que el productor en la finca que, directa o indirectamente, también elabore azúcar de la remolacha o de la caña de azúcar, según fuera determinado por el Secretario haya pagado, o contratado pagar, ya sea bajo convenios de compra . . . . . . . . por cualquier remolacha o caña de azúcar cultivada por otros productores y elaboradas por él, tipos no más bajos que aquéllos que puedan ser determinados por el Secretario como justos y razonables después de una investigación y la debida notificación y oportunidad de audiencia pública.

"Sección 1132.—Cantidad de azúcar; fecha para los pagos—cantidad según sea determinada por el Secretario.

"(*a*) La cantidad de azúcar o azúcar derretida (*liquid sugar*) con respecto a la cual puede hacerse un pago será la cantidad de azúcar o azúcar derretida obtenida . . . . .

"Determinación de la cuota proporcional de la finca

"(*b*) . . . . . . . . . . . . . . .

"Fecha en que comienzan los pagos

"(*c*) . . . . . . . . . . . . . . .

"Sección 1134.—Computación de los pagos; quiénes pueden recibir los mismos; Tipo básico.

"(*a*) . . . . . . . . . . . . . . .

"La finca, unidad como base para el cálculo

"(*b*) . . . . . . . . . . . . . . .

"Pago Total

exigidas por el estatuto. No es suficiente el juicio que forme el agricultor o productor respecto al cumplimiento por su parte de dichas condiciones. Tal juicio o determinación no le da derecho a la compensación. Para ello será necesario que dichas condiciones se hayan cumplido a satisfacción del Secretario de Agricultura, lo que implica que el derecho a la compensación está sujeto a la determinación por parte de dicho funcionario, de los hechos básicos en que descansa el derecho del agricultor o productor. La función del Secretario de Agricultura, en lo que respecta al pago del subsidio, no es meramente ministerial; no se limita a certificar el pago, una vez que reciba la solicitud, conteniendo los hechos que sirven de base al pago. Su misión, va más lejos. Investiga, a través de las agencias correspondientes los hechos expuestos en la solicitud, y si a satisfacción suya se ha cumplido con los requisitos de ley, entonces autoriza el pago.

Para demostrar que el derecho a la compensación está sujeto a la contingencia de la determinación por parte del

---

"(c) ...............
"Personas con derecho al pago

"(d) La solicitud de pago se hará por, y el pago se le hará a, el productor, o, en el caso de su muerte, desaparición, o incapacidad, su representante legal o herederos; *Disponiéndose, sin embargo*, que en la solicitud de pago todos los productores en la finca señalarán el por ciento del pago total que con respecto a la finca ha de verificarse a cada productor. Y *disponiéndose, además*, que los pagos podrán hacerse, (1) en caso de la muerte, desaparición o incapacidad del productor, a aquel beneficiario que el productor hubiere designado en la solicitud de pago; (2) a un productor de un grupo de dos o más productores, siempre que todos los productores en la finca designen a tal productor en la solicitud de pago como único recipiente, para beneficio de ellos, del pago respecto a la finca; o (3) a una persona que no es un productor, siempre que dicha persona controle el terreno comprendido en la finca con respecto a la cual se hace la solicitud de pago y sea designada por el único productor (o por todos los productores) en la finca, como única recipiente para su beneficio o para beneficio de ellos, del pago respecto a la finca.

"Sección 1136: Finalidad de las determinaciones del Secretario.

"Los hechos que constituyan el fundamento para cualquier pago, o la cantidad del mismo autorizado a hacerse bajo este subcapítulo, oficialmente determinados de acuerdo con las reglas o reglamentos prescritos por el Secretario, serán revisables tan sólo por el Secretario, y sus determinaciones al efecto serán finales y concluyentes."

Secretario de Agricultura de que el agricultor ha cumplido las condiciones de ley, bastará exponer aquí un ejemplo. El agricultor ha empleado en su finca varios menores de edad. A juicio del agricultor dichos menores tienen 14 años cumplidos, cada uno de ellos. La agencia que investiga su solicitud de pago, encuentra que los referidos trabajadores eran menores de 14 años y que por tanto el agricultor no cualificaba para el pago total de la compensación. El Secretario de Agricultura determina que efectivamente el solicitante por haber empleado menores de 14 años de edad en su finca no cumplió las condiciones exigidas por el estatuto y procede a hacer los descuentos correspondientes, quedando en su consecuencia, afectada sustancialmente la cuantía de la compensación. En tal caso el agricultor habría declarado un ingreso que nunca recibirá. Asumiendo, sin resolverlo, que el agricultor tuviera algún remedio judicial para impugnar la determinación del Secretario de Agricultura, a pesar de que la Ley Azucarera expresamente dispone que los hechos constitutivos de la base para cualquier pago, pueden ser revisados por dicho funcionario y que su determinación a ese efecto, será final y concluyente, aún así el derecho del agricultor estaría sujeto a la contingencia de que su contención ante los tribunales tuviera éxito.

De lo expuesto concluímos que el derecho del agricultor al pago de la compensación está sujeto a la contingencia de que el agricultor cumpla las condiciones exigidas por el estatuto, a satisfacción del Secretario de Agricultura y que no es hasta entonces que puede decirse que cualquier derecho al ingreso ha sido devengado, o que surgió una responsabilidad determinada por parte del Gobierno de hacer el pago condicional.

*No cometió error el tribunal a quo, al así resolverlo, y la sentencia apelada será confirmada.*