COMPAÑÍA MARÍTIMA DE E. MORENO & CO., S. EN C., ET AL., demandantes y apelados, *v.* SOL LUIS DESCARTES, SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y apelante.

Número 11078.
*Sometido:* 7 de abril de 1954. *Resuelto:* 29 de julio de 1955.

*Hon. Secretario de Justicia José Trías Monge* y *Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelante; *Juan A. Faría,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

De las deficiencias notificadas por el anterior Tesorero de Puerto Rico, a la contribuyente en este caso, solamente forman parte de esta apelación tres partidas, sobre las cuales no pudieron ponerse de acuerdo las partes: (1) ciertas ventas a crédito no contabilizadas, ascendentes a $1,191.26, correspondientes al año contributivo 1944; (2) ciertas compras de mercaderías, ascendentes a $1,263 correspondientes al año contributivo 1944 y (3) una cuenta contingente, ascendente a $2,725.46 correspondiente al año contributivo 1945.

En cuanto a las ventas a crédito no contabilizadas por $1,191.26 correspondientes al 1944, la situación de hecho es la siguiente: la contribuyente era dueña de tres goletas conocidas por "Eloísa", "Pocahontas" y "Lydia Esther", que explotaba la contribuyente en un negocio de transporte marítimo. No hay duda que las ventas a crédito no contabilizadas fueron hechas para la explotación de dichas goletas. La ilustrada Sala sentenciadora llegó a la conclusión que se trataba de un gasto de operación del negocio de la contribuyente, sin ingreso ni beneficio alguno para la contribuyente. En apelación el Secretario de Hacienda nos argulle que "si bien es cierto que la demandante apelada Cía. Marítima de E. Moreno & Co., S. en C., era propietaria de tres goletas y los materiales por valor montante a $1,191.26 fueron utilizados para las mismas, no es menos cierto que según apa-

rece de los libros de dicha demandante-apelada, la práctica que utilizaba era considerar las goletas como a cualquier otro cliente particular a quien le supliera materiales" y "si al comprar dichos materiales los incluyó en la cuenta "compras" que finalmente reducía su ingreso neto, se le estaría permitiendo a dicha demandante-apelada deducir el costo de dicha mercadería dos veces: la primera, al comprarla; la segunda, al incluirla como gasto de operación de sus negocios."

La prueba lo que demostró fué que en la cuenta "goletas" se entraba todo lo que fuera gasto de operación o ingreso de dichas goletas. El testigo señor Benigno López Sariego, Inspector principal del Negociado de Contribuciones sobre Ingresos, quien fué la persona que practicó la investigación en los libros de la contribuyente, presentado como testigo suyo por el Secretario de Hacienda, declaró: "porque como ya dije, en esa cuenta de ventas, corrijo, de *goletas*, ellos entraban todo. Como consecuencia, ellos hacían facturas de ventas para esa goleta por cualquier cosa, lo que quiere decir que para los efectos, era una venta lo que ellos hacían . . . lo cobraban después . . . con los ingresos. El saldo de esa cuenta era el beneficio o la pérdida." (2da. t. 9)

Lo importante aquí es determinar si las ventas de mercaderías no contabilizadas representaban un gasto de operación y no un ingreso o beneficio. La ilustrada Sala sentenciadora llegó a la conclusión que representaban un gasto de operación y no un ingreso, y después de examinar cuidadosamente toda la prueba, es nuestro criterio que tal conclusión es enteramente correcta. Parece que el otro problema es determinar si hay una doble deducción de la misma partida a los efectos de computar el ingreso o beneficio.

En cuanto a estas facturas, el testigo señor Manuel Comas declaró lo siguiente: "la entrada original en la página 28 se debita a cuentas a cobrar que es una cuenta a cobrar que no es de operación y se acredita a ventas. Así fué como originalmente se hizo . . . yo solicité que se ordenara que lo debitaran a cuentas de goletas y lo acreditaran a cuentas a

cobrar . . . aparecía recargada la cuenta a cobrar con las cantidades que no iban a ser cobradas sino que eran las propias goletas quienes debían ese dinero . . . porque fueron materiales despachados . . . los ingresos de las goletas incluían los ingresos de la Compañía Marítima". (1ra. t. 23–24). El asiento original y el asiento de corrección se hicieron dentro del mismo año, (t. 11). El propio testigo del Secretario de Hacienda contestando esta pregunta del abogado del Departamento de Justicia: "¿entonces, testigo, al usted concluir en su informe que los $1,191.26 no habían sido contabilizados y por lo tanto *usted se los añadió a los ingresos*, usted pasó por inadvertido el hecho que ya esa cantidad de $1,191.26 había sido cargada a las goletas en otro asiento?", contesta: "probablemente.—Tiene que haber sido así," (t.11).

Para los efectos de determinar el ingreso, en el extremo del caso que nos ocupa, bastaba considerar el montante de las ventas en metálico o a crédito y lo que producían las goletas menos los gastos de operación del negocio en general. Es indudable que la entrada original tuvo el efecto de convertir un gasto de operación en una cuenta a cobrar, o sea en un ingreso, y que el asiento de corrección se justificaba, puesto que de los materiales empleados, en la explotación de las goletas, la contribuyente no derivaba ningún ingreso o beneficio. No resulta lógico pensar que por el hecho que una empresa compre mercadería, no para revenderla sino para usarla en su propio negocio, reduzca su ingreso sobre ella dos veces: una, al momento de comprarla; dos, al momento de incluirla como un gasto de operación. Desde sus orígenes, el cargo era uno de egreso y nunca de ingreso. El hecho de que un error de contabilidad lo convirtiera en un ingreso, no desvirtúa su carácter de egreso, y por lo tanto, su corrección no implica una doble deducción como partida de egreso a los efectos contributivos.

▮▮ En cuanto a las compras de mercaderías ascendentes a $1,263 correspondientes al año contributivo 1944, la

contribuyente ofreció el testimonio de doña María Salas viuda de Moreno, quien declaró: "cuando estábamos en liquidación que yo entré en la compañía se empezó a buscar papeles y a investigar y encontré en la caja unos vales por compras de sacos, botellas y distintos artículos de los que se compraban allí . . . los examiné y los recogí y les puse un atache . . . es una costumbre comprar sacos usados para después venderlos y eran vales por la compra de sacos, botellas, porque tenemos unos drones de alquitrán y se compran artículos para envasar aceite y alquitrán." (1ra. t. 34)

La ilustrada Sala sentenciadora, al pasar juicio sobre este punto, se expresó de la manera siguiente: "el hecho de que la demandante acostumbrara anotar en su "Diario" al finalizar cada mes, los importes de compras efectuadas mediante el pago de dinero en efectivo, no es prueba de que desde noviembre 1ro. a enero 31 no hubiera sacado de su caja cierto numerario para llevar a cabo compras que, por inadvertencia, no se anotaron, pero que se hicieron constar en determinados vales, depositados y guardados en la caja. Al ser llevado el importe de tales vales, dentro del año en que correspondía hacerlo, a la cuenta de compras, acreditándose, como se hizo en este caso (véase el exhibit II, página 66), a la cuenta de caja, nada fuera de lo probable fué realizado."

El Secretario de Hacienda nos argumenta que "toda determinación contributiva del Secretario de Hacienda de Puerto Rico se presume correcta y que dicha presunción sólo puede ser controvertida mediante prueba persuasiva y fehaciente . . . que la prueba para controvertir dicha presunción ha de estar cimentada en hechos concretos y no en meras generalidades. Aunque no podemos dudar de la corrección expositiva de dicha doctrina: *Corporación Azucarera* v. *Tribunal de Contribuciones*, 69 D.P.R. 204 (*Marrero*), (1948), cita precisa a la pág. 208; *Tesorero* v. *Tribunal de Contribuciones y Aguirre*, 70 D.P.R. 408, (*De Jesús*), (1949), cita precisa a la pág. 411; *García* v. *Secretario de Hacienda*, 76 D.P.R. 503 (*Pérez Pimentel*), (1954, cita precisa a las págs.

505–506, no estamos convencidos de la corrección de su aplicación a los hechos de este caso. La presunción de corrección de la imposición administrativa lo que se propone es trasladar al contribuyente la obligación de probar la corrección de su declaración de ingresos. Por eso hemos resuelto además que la presunción cede ante la prueba del caso: *Buscaglia, Tes. v. Tribunal Contribuciones y Galiñanes, Inc.*, 70 D.P.R. 925 (*De Jesús*), (1950), cita precisa a la pág. 928; *Soto* v. *Secretario de Hacienda*, ante pág. 177, (*Pérez Pimentel*), (1955), cita precisa a la pág. 180. Cuando se presenta prueba por el contribuyente sosteniendo su declaración, el problema se reduce a determinar, en cada caso y de acuerdo con los méritos de su propia virtualidad, el valor persuasivo de dicha prueba. Cada caso debe considerarse como una proposición distinta, de acuerdo con sus circunstancias peculiares, procurando hasta donde sea compatible con las mejores normas del valor probatorio, que prevalezca el juicio de la Sala sentenciadora sobre la credibilidad.

■ El Secretario de Hacienda nos arguye, que en cuanto a esta partida, la declaración única de la señora Salas viuda de Moreno es tan débil, que él podía descansar en la presunción de corrección y sentirse relevado de la obligación de presentar prueba y aún de contrainterrogarla. La realidad es que el testimonio de la señora Salas viuda de Moreno aparece incólume en los autos y ello nos obliga a aplicar la regla que es suficiente un testimonio, que le merezca crédito a la Sala sentenciadora, para declarar probado un hecho. Además es evidente que la ilustrada Sala sentenciadora no sólo consideró la declaración de la señora Salas viuda de Moreno, sino también las constancias de los libros de la corporación en el mismo sentido. Además el valor probatorio de un testimonio no tiene que considerarse por sí solo, como algo inconexo y suelto, que no tiene relación alguna con el resto de la prueba; sino, por el contrario, puede medirse como una parte dentro de un todo, a la cual no le es ajena los elementos de

prueba, establecidos antes y después de su exposición, por otros testimonios.

Aunque indudablemente la Sala sentenciadora no está en la obligación de darle valor probatorio a un testimonio que resulte increíble, o contrario a la razón natural de las cosas, o improbable dentro del orden deductivo de la inteligencia humana, tampoco está impedida, por la existencia de la presunción de corrección, de darle valor probatorio a un testimonio que resulte creíble, o posible, o aún probable dentro de las normas razonadas de la persuasión.

Estamos conformes que en cuanto a esta partida de compra, el testimonio de la señora Salas viuda de Moreno que explicó el origen y la naturaleza de los cargos que aparecían en los libros de la contribuyente, fué suficiente para sostener la legitimidad de la deducción reclamada por la contribuyente.

En cuanto a una cuenta contingente ascendente a $2,725.46 correspondiente al año contributivo 1945, el señor Manuel Comas, declarando por la contribuyente, expuso los siguientes hechos: "como dije anteriormente existió un período de liquidación de la sociedad en comandita autorizado por el Tesorero desde febrero 1 hasta agosto 31 de 1945 y se llamó la atención de que en la caja de la compañía existían varias facturas de J. Rodríguez Pou a cargo de la Compañía Marítima. La atención me fué llamada por la señora Salas viuda de Moreno. Nosotros sufrimos extrañeza al ver la factura que no estaba en los libros. Como estábamos en un período de liquidación, la relación con los gestores no eran del todo cordiales, nos mandaron donde Rodríguez Pou para decirle que tenía que probar esa deuda. El señor Rodríguez Pou nos remitió una factura y le pedimos la prueba de que había sido entregada y él nos dijo que tenía el recibo por el empleado de la compañía de que la madera había llegado a la compañía, entonces yo le pedí una copia fotostática. Comprobamos que la factura existía en realidad y que no había sido entrada en los libros y procedí a dar una orden de acreditar esto en los libros. Mayormente era una cuenta mayor. Era

una cuestión aceptada de que estaba correcto . . . deducido su importe del último año en la planilla de la sociedad . . . la factura tenía fecha de enero 20 de 1944 y el conduce tenía fecha de diciembre 10 de 1943, un mes diez días antes de la factura."

La contribuyente tenía un sistema de contabilidad de incurrido y devengado. En el caso de *Bravo* v. *Tesorero de Puerto Rico*, 76 D.P.R. 154, *(Pérez Pimentel)*, (1954), cita precisa a la pág. 157 escolio 2, establecimos que cuando el ingreso se toma en consideración tan pronto se gana, háyase o no recibido y los gastos son reconocidos tan pronto se incurre en ellos, háyanse o no pagados, el sistema de contabilidad es uno de incurrido y devengado. En dicho caso resolvimos también que una partida cuyo cobro está sujeto a contingencia no puede considerarse como devengada. A contrario sensu podemos resolver, que una partida de gastos cuya exigibilidad está sujeta a una contingencia futura, no puede considerarse como incurrida: *Lucas* v. *American Code Company*, 280 U. S. 445, 74 L. ed. 538, *(Brandeis)*, (1930), cita precisa a las págs. 450–452 U. S., 540–541 L. ed. (referente a daños por violaciones de contratos); *Brown* v. *Helvering*, 291 U. S. 193, 78 L. ed. 725 *(Brandeis)*, (1934) cita a las págs. 200–201 U. S., 731 L. ed. (referente al pago de comisiones) con anotación a la pág. 734 L. ed. et seq. sobre una variedad de obligaciones a pagar; *Dixie Pine Products Company* v. *Commissioner of Internal Revenue*, 320 U. S. 516, 88 L. ed. 270 *(Roberts)*, (1944), cita precisa a la pág. 519 U. S., 272 L. ed., con una anotación a la pág. 273 L. ed. et seq. sobre las cuentas de reserva; 143 A.L.R. 1057, (1943) anotación sobre intereses contingentes, contribuciones futuras y gastos.

Si la contribuyente hubiera tratado de deducir la partida que estudiamos en el año 1943, basándose en que fué la fecha en que recibió la mercadería, o en el año 1944, basándose en que fué la fecha de facturación, como en ninguna de esas dos fechas ella había aceptado la responsabilidad del pago, tal vez tendríamos que aplicar la teoría que tratándose de

obligaciones contingentes, las mismas no se considerarían como inccurridas dentro de un sistema de contabilidad de gastos incurridos e ingresos devengados. Pero en este caso la contribuyente reconoció la cuenta en el 1945, la incluyó en sus libros como una obligación a pagar en el 1945 y la dedujo de su planilla de ingresos correspondiente al año 1945. Por lo tanto no se trataba de una obligación contingente o de la creación de una cuenta de reserva tal como las mismas se conocen en Derecho contributivo. El hecho de que la pagara más tarde del 1945, dentro del sistema de ingresos devengados y gastos incurridos, no cambia la situación: *Bravo v. Tesorero*, supra, cita precisa a la pág. 159. No cometió error la ilustrada Sala sentenciadora al declarar deducible esta última partida.

*Debe confirmarse la sentencia apelada.*